566 So.2d 469 (1990)
Antonio WILLIAMS
v.
STATE of Mississippi.
No. 07-KA-59053.
Supreme Court of Mississippi.
August 22, 1990.
*470 V.T. Vallas, Jackson, for appellant.
Mike C. Moore, Atty. Gen., Deirdre McCrory, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before ROY NOBLE LEE, C.J., and ROBERTSON and BLASS, JJ.
ROBERTSON, Justice, for the Court:

I.
This homicide prosecution arises from that frequently fatal mixture of unrequited love and intoxicating beverages. The issues presented on appeal are more legalistic in nature, one having to do with pre-trial discovery and the other regarding instructions to the jury on permissible verdict options for a verdict. For the reasons described below, we find no error and affirm.

II.
The scene was the Mill & Oakley Club in Jackson, Mississippi, on the early morning hours following Saturday night, February 21, 1987. Percy Crockett, Jr. had lost his love, Eloise Bracey, and was at the club with a friend, Sammy Mason. Eloise was with her new flame, Wilbur Cage, together with Antonio Williams who, in time, became the Defendant below and is the Appellant here.
As the club closed that Saturday night, Eloise Bracey left with Cage and Williams. Unaccepting of his fate and thinking Cage and Williams had forced Eloise to accompany them, Crockett, his friend Mason with him, followed after and tried to get Eloise to leave Cage and go with him. Crockett was driving Mason's car. Cage was driving a station wagon in which Williams and Eloise Bracey were passengers.
Cage stopped his vehicle at the intersection of Cohea and Wood Street, and Antonio Williams got out, "said a few words" to Crockett, and shot at him "two or three times." Crockett had no weapon and had said nothing to Williams. Police officers soon arrived and found Crockett severely injured behind the wheel of the automobile with Mason standing outside. Crockett was taken to University Medical Center but soon died, cause of death being massive bleeding caused by a bullet "fired to the left thigh."
The Hinds County Grand Jury returned an indictment formally charging Antonio Williams with the crime of murder during the January term, 1987. By reason of two prior felony convictions, the Grand Jury also charged Williams as an habitual offender. The case was called for trial on December 8, 1987, and in due course the jury found Williams guilty as charged. The Circuit Court further found that Williams was an habitual offender and sentenced him to life imprisonment without *471 eligibility for probation or parole.[1]See Miss. Code Ann. §§ 97-3-21 and 99-19-81 (Supp. 1987).

III.
Williams first argues that the Circuit Court erred when it allowed the prosecuting attorneys to question him about a prior statement he is said to have made to police officers when his attorney had not been given a copy of the statement prior to trial. Williams presses the point in the context of his broad discovery request and our settled rule that an accused in a criminal prosecution is in pre-trial discovery entitled to have copies of any statements he may have made to law enforcement authorities concerning the offense. Rule 4.06(a)(2), Miss.Unif.Crim.R.Cir.Ct.Prac. (1979, as amended).
Two features of the case provide our context. First, the content of the statement at issue was that Williams had told police detectives that he was out running the streets until 5:00 o'clock on the morning of February 22, 1987. Williams' defense at trial was an alibi and his mother had testified he had returned home between 2:00 o'clock and 2:30 on the morning in question. The statement obviously impeached Williams' alibi.
Second, the dispute at trial evolved as a question of fact: Williams requested any prior statements, but did the prosecuting attorneys give it to him?
The prosecution points to a Discovery Form utilized in all cases in the transmission of discovery materials to the defense. In the particular case, the second item on the form is "Recorded Statements of the Defendant." The entry on the accompanying line is "See attached pages," suggesting that some pages saying something were attached. The sensible inference is that Williams' prior statement was attached. Notwithstanding, Williams' attorney adamantly denies that he received such.
Moreover, on June 17, 1987, an assistant district attorney prepared a Certificate of Discovery certifying that the prosecution had provided, inter alia, a copy of the defendant's statement to law enforcement officers and mailed the form to defense counsel. In this context the Circuit Court found as a fact that defense counsel had received both the Discovery Form and the Certificate of Discovery and stated:
I think that Mr. Vallas did receive at least a cover sheet on June the 11th and also received in all probability, a copy of the Discovery Certificate that was mailed on June the 17th. Both of those items clearly reflect that there are statements of the defendant. The rules of procedure cannot be designed to anticipate every possible detail. It is entirely possible that exhibits could be omitted inadvertently. Exhibits could be lost in the mail process and the correct procedure, I feel, would have been to make inquiry at some point within six months as to what the statements were that had not been received. For that reason, I don't see that there is any reason to declare a mistrial in this case so the objection will be overruled.
Clearly the defense counsel was on notice that the prosecution probably had recorded statements given by Williams. If in fact he did not receive them, his failure to follow up and find out what they were cannot be charged against the prosecution. Nothing in this record suggests other than that the prosecution acted timely with care and in good faith.
"The purpose of the Uniform Criminal rule 4.06 is to avoid unfair surprise to either the State or the defendant at trial." Ryan v. State, 525 So.2d 799, 802 (Miss. 1988). In Ryan, the defense claimed the prosecution failed to inform them that they had an eyewitness. Id. The trial judge found that the defense was on notice that *472 such was the case by the content of the statement given by the witness to the police of which the defense had a copy. Id. This Court held that the trial court could not be found in error. Id.
In this case Williams was on notice by the contents of the Discovery Form that there were statements made to the police by him. Attorney Vallas had six months in which to get a copy if the prosecution failed to include it in the original packet. The Circuit Court committed no error in its handling of the matter.

IV.
Williams next argues that the Circuit Court should have instructed the jury on the lesser offense of manslaughter. The record reflects that no such instruction was requested. Indeed, during the instruction conference the following colloquoy occurred:
BY THE COURT: Does either side feel that this is a case calling for an instruction on manslaughter?
BY MR. DELAUGHTER [Assistant District Attorney]:
No, Your Honor.
BY MR. VALLAS: [Defense Counsel]:
No, Your Honor.
BY THE COURT: I agree ... (emphasis added).
It is not clear whether defense counsel  at trial, at least  genuinely thought that this was not a manslaughter case, or whether he was merely engaged in a bit of trial strategy, gambling for a verdict of not guilty rather than a "compromise verdict" of manslaughter. This is not the sort of case in which we would relax our general rule that no error may be predicated upon the Court's refusal to give an instruction defense counsel never requested. See Carney v. State, 525 So.2d 776, 778 (Miss. 1988); Cummins v. State, 515 So.2d 869, 872 (Miss. 1987); Fairman v. State, 513 So.2d 910, 913 (Miss. 1987); Wetz v. State, 503 So.2d 803, 809 (Miss. 1987); Patterson v. State, 289 So.2d 685, 686 (Miss. 1974).
In any event, our review of the evidence in the case discloses no predicate for a manslaughter instruction. We find no error here.

V.
Beyond all of this, we have carefully reviewed the transcript and the record of proceedings below, considering that the defendant has been sentenced to life imprisonment without eligibility for probation or parole. We find the case for the prosecution supported by two eyewitnesses, Sammy Mason and Eloise Bracey, each of whom testified without equivocation that Williams murdered Crockett in cold blood. The evidence is more than sufficient that the verdict is beyond our prerogative to disturb.
CONVICTION OF MURDER AS AN HABITUAL OFFENDER AND SENTENCE OF LIFE IMPRISONMENT WITHOUT ELIGIBILITY FOR PROBATION OR PAROLE AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, SULLIVAN, ANDERSON, PITTMAN and BLASS, JJ., concur.
NOTES
[1] On July 27, 1982, Williams was convicted of burglary on premises owned by Paul Morris on September 2, 1980, and was sentenced to three years imprisonment. On the same day Williams was adjudged guilty of a second burglary, this one arising out of an incident on April 6, 1982, on premises owned by Rosie Lee Smith. On this conviction, Williams was sentenced to five years imprisonment.