999 So.2d 379 (2008)
Edsel BURTON a/k/a Edsel Carl Burton a/k/a Burt, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2007-KA-00212-COA.
Court of Appeals of Mississippi.
May 20, 2008.
Rehearing Denied October 14, 2008.
Certiorari Denied January 22, 2009.
*380 Leslie S. Lee, Jackson, Lori Nail Basham, Benjamin Allen Suber, attorneys for Appellant.
Office of the Attorney General by Laura Hogan Tedder, attorney for Appellee.
Before LEE, P.J., BARNES and ISHEE, JJ.
ISHEE, J., for the Court.
¶ 1. Edsel Carl Burton was convicted of the murder of his wife, Jewel Burton (Jewel), and sentenced to life imprisonment in the custody of the Mississippi Department of Corrections (MDOC). Burton appeals, asserting that the trial court denied him a fundamental right by not instructing the jury on heat-of-passion manslaughter. Finding no error, we affirm.

FACTS AND PROCEDURAL HISTORY
¶ 2. On April 26, 2005, Jewel was found dead in her home on Highway 25 in Fulton, Mississippi. She was found by her daughter, Nancy Wheeler. Wheeler went to the house to check on her mother having not heard from her mother since the previous day and knowing that Jewel and Burton were involved in an abusive relationship. When Wheeler arrived at the house, she noticed her mother's car parked in the yard. She knocked on the back door, but no one answered. Wheeler then entered the house and found Jewel lying lifeless on the bathroom floor. Subsequently, she called 911. While on the telephone, she noticed that Burton was at home as well. Unbeknownst to Burton, Wheeler saw him walk out of the bedroom and into the bathroom where Jewel was lying. As a result, the 911 responder recommended that Wheeler go outside and wait for the police.
¶ 3. When the police arrived on the scene, they found Burton still in the house. They surrounded the house and ordered Burton to come out. Burton soon surrendered and was taken into custody as a person of interest. After obtaining a search warrant, investigators searched the Burtons' home. While there, they recovered a Smith and Wesson .38 caliber revolver, which was later identified as the murder weapon. The gun had three live rounds in the cylinder, and two rounds had been removed. They also collected samples of blood stains taken from the hallway outside of the bathroom, a white towel that was on the kitchen floor underneath the revolver, a hair from a beer bottle in the bathroom, and some notes that were found in the bedroom. Two projectiles were recovered from Jewel's body and later identified as being discharged from the revolver.
¶ 4. Subsequently, Burton was arrested and taken to the Itawamba County Jail. Burton remained in jail overnight. The next day, Burton was summoned from his cell and taken to an office for questioning. According to the police, upon entering the office, Burton made a spontaneous statement that he had "done a bad thing" and wanted to plead guilty and be put to death. After being advised of his rights and waiving those rights, Burton agreed to answer questions pertaining to the shooting. Burton told interviewers that he and Jewel had been in an argument because she had decided to leave him. Burton stated that during the argument, he followed Jewel into the bathroom and shot her. After the first shot, Jewel fell to the floor. Burton stated that when she attempted to get up Burton shot her again, this time in the back of the head.
*381 ¶ 5. At trial, Burton testified that he and Jewel had been fighting constantly, and she had decided to live with a friend. Jewel had been away for a day or so, and Burton had spent that time drinking heavily. Though he admitted that he had been drinking since he was a teenager, he testified that he drank more than normal over the five days prior to the murder because he was so "perturbed." Burton testified that during the days leading up to the shooting, he consumed: a half-gallon container of vodka, a half-gallon container of whiskey, and a case and a half of beer. On the day of the murder, Jewel came home to collect some personal belongings to take back with her to her friend's house. Burton testified that they were "fussing," and he attempted to convince her to stay. He went on to state that he was "just completely flustered" by Jewel's attempt to leave. Though Burton denied remembering anything else that occurred that night, the State presented Jimmy Perrine, Burton's cell mate, who testified that Burton admitted to him that he shot his wife.
¶ 6. At the close of the case, the jury was instructed on deliberate-design murder, as well as the law on voluntary intoxication. Burton requested that the jury be instructed on heat-of-passion manslaughter. His request was refused by the trial judge, and a manslaughter instruction was not given. On January 23, 2007, the jury found Burton guilty of deliberate-design murder and sentenced him to life imprisonment in the custody of the MDOC. Subsequently, Burton filed motions for judgment of acquittal, judgment notwithstanding the verdict or, in the alternative, a new trial, all of which were denied.

STANDARD OF REVIEW
¶ 7. This Court's standard of review for jury instruction issues is well established. "When considering a challenge to a jury instruction on appeal, we do not review jury instructions in isolation; rather, we read them as a whole to determine if the jury was properly instructed." Scott v. State, 878 So.2d 933, 966(¶ 92) (Miss.2004) (quoting Milano v. State, 790 So.2d 179, 184(¶ 14) (Miss.2001)). "In determining whether error lies in the granting or refusal of various instructions, the instructions actually given must be read as a whole. When so read, if the instructions fairly announce the law of the case and create no injustice, no reversible error will be found." Coleman v. State, 697 So.2d 777, 782 (Miss.1997) (quoting Collins v. State, 691 So.2d 918, 922 (Miss.1997)). There is no error "if all instructions taken as a whole fairly, but not necessarily perfectly, announce the applicable rules of law...." Scott, 878 So.2d at 966(¶ 92).

ANALYSIS

Whether the trial court erred by failing to instruct the jury on heat-of-passion manslaughter.
¶ 8. Burton claims that the trial court erred in refusing instructions D-4 and D-5, which would have instructed the jury on the lesser-included offense of heat-of-passion manslaughter. Burton contends that by refusing the instruction, the trial court deprived him of a fundamental right. He argues that individuals have a fundamental right, even if there is minimal evidence, to have their theory of the case presented to the jury. While Burton's argument is correct regarding his right to present his theory of the case, he is incorrect in his assertion that the trial judge erroneously excluded the jury instruction. Such an instruction was unsupported by the evidence presented at trial.
¶ 9. The Mississippi Supreme Court has stated that jury "instructions should be given only if they are applicable to the *382 facts developed in the case being tried." Lancaster v. State, 472 So.2d 363, 365-66 (Miss.1985) (quoting Pittman v. State, 297 So.2d 888, 893 (Miss.1974)). The supreme court has also held that "[t]o grant an instruction that is not supported by the evidence would be error." Id. Specifically, "[l]esser-included offense instructions should be given if there is an evidentiary basis in the record that would permit a jury rationally to find the defendant guilty of the lesser offense and to acquit him of the greater offense." Welch v. State, 566 So.2d 680, 684 (Miss.1990) (citing McGowan v. State, 541 So.2d 1027, 1029 (Miss. 1989)). Further, the supreme court stated that:
A lesser-included offense instruction should be granted unless the trial judge and ultimately this Court can say, taking the evidence in the light most favorable to the accused and considering all the reasonable inferences which may be drawn in favor of the accused from the evidence, that no reasonable jury could find the defendant guilty of a lesser-included offense (conversely, not guilty of at least one essential element of the principal charge).
Id. (citation omitted).
¶ 10. Instruction D-5, which was requested by Burton, outlined the elements of heat-of-passion manslaughter as defined in Mississippi Code Annotated section 97-3-35 (Rev.2006). The statute provides, "[t]he killing of a human being, without malice, in the heat of passion, but in a cruel or unusual manner, or by the use of a dangerous weapon, without authority of law, and not in necessary self-defense, shall be manslaughter." Miss.Code Ann. § 97-3-35. Our supreme court has defined heat of passion as:
a state of violent and uncontrollable rage engendered by a blow or certain other provocation given, which will reduce a homicide from the grade of murder to that of manslaughter. Passion or anger suddenly aroused at the time by some immediate and reasonable provocation, by words or acts of one at the time [sic]. The term includes an emotional state of mind characterized by anger, rage, hatred, furious resentment or terror.
Tait v. State, 669 So.2d 85, 89 (Miss.1996) (quoting Buchanan v. State, 567 So.2d 194, 197 (Miss.1990)).
¶ 11. Burton has failed to present any evidence that he acted in the heat of passion when he shot Jewel. He bases his heat-of-passion argument on the assertion that the two had a history of fighting, and Jewel's threats to leave him caused him to be "completely flustered" on the day of the shooting. The record indicates that at most, Burton and his wife were engaged in a verbal argument and perhaps some minor physical altercation. However, the law is well settled that words alone are not enough to require a heat-of-passion manslaughter instruction. Myers v. State, 832 So.2d 540, 542(¶ 10) (Miss.Ct.App.2002). Pushing or shoving is also insufficient to require the instruction absent testimony that the defendant was acting out of "violent or uncontrollable rage." Turner v. State, 773 So.2d 952, 954(¶ 8) (Miss.Ct.App. 2000). Therefore, the verbal argument and any physical confrontation between Burton and his wife are insufficient to require a heat-of-passion manslaughter instruction. Further, the record is void of any evidence that Burton was in a state of violent or uncontrollable rage since by Burton's own testimony, he was so drunk that he did not even remember killing Jewel.[1]
*383 ¶ 12. This Court is further skeptical of Burton's argument based on the method by which he killed his wife. The record is clear, based on expert testimony and Burton's own admission to the police, that Burton shot Jewel in the arm, watched her struggle to get up, and then shot her again in the back of the head. We do not believe that these actions coincide with our supreme court's interpretation of what constitutes uncontrollable rage for the purposes of heat-of-passion manslaughter. It is apparent that Burton's actions were calculated and fall more in line with deliberate-design murder.
¶ 13. Taking the evidence in the light most favorable to Burton and considering all the reasonable inferences that may be drawn in his favor, we find that the evidence did not support a jury instruction for heat-of-passion manslaughter. Therefore, the trial court did not err by refusing to grant the instruction.
¶ 14. For the foregoing reasons, the judgment of the Circuit Court of Itawamba County is affirmed.
¶ 15. THE JUDGMENT OF THE CIRCUIT COURT OF ITAWAMBA COUNTY OF CONVICTION OF MURDER AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, BARNES, ROBERTS AND CARLTON, JJ., CONCUR.
NOTES
[1] Burton's intoxication is irrelevant because there is no evidence that he was unable to distinguish between right and wrong when sober. See Jackson v. State, 815 So.2d 1196, 1201 (¶ 10) (Miss.2002).