MYERS, P.J.,
 

 for the Court.
 

 ¶ 1. Danny Allen Westbrook was convicted in the Harrison County Circuit Court of the murder of George Wayne Sharpe. He was sentenced to life in the custody of the Mississippi Department of Corrections
 
 *831
 
 (MDOC). Aggrieved by his conviction and sentence, Westbrook appeals arguing that: (1) the weight and legally sufficiency of the evidence do not support his murder conviction; (2) the trial court erred in refusing his manslaughter jury instruction; (3) the jury was not properly instructed on the difference between culpable-negligence manslaughter and depraved-heart murder; (4) the trial court erred in refusing a self-defense jury instruction; and (5) he received ineffective assistance of counsel. Finding no error, we affirm.
 

 FACTS AND PROCEDURAL HISTORY
 

 ¶ 2. During the early morning hours of August 22, 2006, Sharpe was a patron at Buddy’s Inn (Buddy’s) in Gulfport, Mississippi. Witnesses testified that Sharpe and a female customer were arguing at Buddy’s over money. The argument escalated into Sharpe and the female customer yelling at each other. At this point, West-brook, who was working as a bouncer at Buddy’s, escorted Sharpe out of the establishment. Witnesses testified that Sharpe and Westbrook exchanged words while Sharpe was being escorted out, but no physical confrontation occurred.
 

 ¶ 3. Approximately twenty minutes later, two other patrons entered Buddy’s and informed Westbrook that Sharpe was outside in Buddy’s parking lot. Upon hearing this, Westbrook approached the bar and stated: “[I’m] going to jail tonight.” He then retrieved a baseball bat that was located behind the bar inside Buddy’s and proceeded outside of the bar.
 

 ¶ 4. Several witnesses followed West-brook outside of the bar to see the events that were occurring. One of the witnesses testified that Westbrook approached Sharpe who was in his truck and pulled Sharpe out of the vehicle. Another witness testified that Sharpe stated, “you do not want any of this son,” and began walking toward Westbrook. Westbrook then swung the baseball bat at Sharpe, striking him around the back of his neck and head. This caused Sharpe to fall into a huddled position. Westbrook struck Sharpe again in the back of the head causing him to fall to the ground. Testimony revealed that this blow likely split Sharpe’s skull open. Westbrook proceeded to strike Sharpe a third time in the head, which caused him to fall flat on the ground.
 

 ¶ 5. Witnesses testified that Westbrook reentered Buddy’s after pummeling Sharpe and gave the baseball bat to the bartender, who took it into a back room at Buddy’s. Westbrook warned one of the witnesses that she did not see anything. Several minutes passed before anyone called the police to report what had occurred outside Buddy’s.
 

 ¶ 6. The police and paramedics arrived and transported Sharpe to the local hospital. Dr. Paul McGarry, an expert in forensic pathology, performed the autopsy on Sharpe’s body. He testified that Sharpe was rendered brain dead on the day of the attack, but was placed on a ventilator until his passing on August 24, 2006. He also testified that Sharpe received three blows to the head-two to the left side of his head and one on the right side. He stated these blows were severe enough to cause injury and bleeding on the opposite side of the head from where the actual blow occurred. He concluded that Sharpe’s cause of death was blunt head injuries causing a laceration of the scalp, a fracture of the skull, bruising of the brain, internal bleeding inside the head, and massive brain swelling.
 

 ¶ 7. Investigators with the Gulfport Police Department arrived on the scene the morning of the attack and began investigating the crime. Several witnesses identified Westbrook as the person who had
 
 *832
 
 beaten Sharpe. This led to Westbrook being arrested and subsequently indicted for the murder of Sharpe. After a two-day jury trial, Westbrook was convicted of murder and sentenced to life in the custody of the MDOC. Westbrook filed a post-trial motion for a judgment notwithstanding the verdict or, in the alternative, for a new trial; the trial court denied this motion. Westbrook timely filed this appeal.
 

 STANDARD OF REVIEW
 

 ¶ 8. “[0]ur authority to interfere with a jury’s verdict is limited[.] [W]e must view the evidence in the light most consistent with the verdict, and we must give the prosecution ‘the benefit of all favorable inferences that may reasonably be drawn from the evidence.’ ”
 
 Kitten v. State,
 
 958 So.2d 172, 174(¶ 3) (Miss.2007) (citations omitted).
 

 DISCUSSION
 

 I. LEGAL SUFFICIENCY AND WEIGHT OF THE EVIDENCE
 

 ¶ 9. Westbrook argues the legal sufficiency and the weight of the evidence do not support his murder conviction. We will address each argument separately.
 

 A. Legal Sufficiency
 

 ¶ 10. In
 
 Bush v. State,
 
 895 So.2d 836, 843(¶ 16) (Miss.2005), our supreme court established our standard of review regarding the legal sufficiency of evidence:
 

 [T]he critical inquiry is whether the evidence shows beyond a reasonable doubt that accused committed the act charged, and that he did so under such circumstances that every element of the offense existed; and where the evidence fails to meet this test it is insufficient to support a conviction. However, this inquiry does not require a court to ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt. Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.
 

 (Citations omitted). “[I]f a review of the evidence reveals that it is of such quality and weight that, having in mind the beyond a reasonable doubt burden of proof standard, reasonable fair-minded men in the exercise of impartial judgment might reach different conclusions on every element of the offense, the evidence will be deemed to have been sufficient.”
 
 Id.
 
 (citations omitted).
 

 ¶ 11. Upon our review of the record, we find the evidence established the elements of murder beyond a reasonable doubt. Westbrook armed himself with a baseball bat with the intent to cause serious bodily injury or death to Sharpe and struck an unarmed Sharpe in the head three times with the baseball bat, the first of which would have knocked him unconscious and defenseless. These actions resulted in Sharpe’s death.
 

 ¶ 12. Westbrook also argues that his actions amounted to justifiable homicide under Mississippi Code Annotation section 97-3-15(l)(e) and (3) (Rev. 2006). He states that the trial court should have given a justifiable homicide jury instruction sua sponte because it was readily apparent from the record that he was entitled to such instruction. However, “the trial court has no affirmative duty to offer jury instructions sua sponte or to suggest instructions for the parties to consider.”
 
 McGregory v. State,
 
 979 So.2d 12, 18(¶ 12) (Miss.Ct.App.2008) (Citing
 
 Giles v. State,
 
 650 So.2d 846, 854 (Miss.1995)). “[N]o error may be predicated upon the Court’s refusal to give an instruction de
 
 *833
 
 fense counsel never requested.”
 
 Williams v. State,
 
 566 So.2d 469, 472 (Miss.1990).
 

 ¶ 13. Lastly, Westbrook argues that his actions were justifiable under the “Castle Doctrine.”
 
 See
 
 Miss.Code Ann. § 97-3-15(3) (Rev.2006) (“A person who uses defensive force shall be presumed to have reasonably feared imminent death or great bodily harm, or the commission of a felony upon him or another or upon his dwelling ... or against his business or place of employment or the immediate premises of such business or place of employment, if the person against whom the defensive force was used, was in the process of unlawfully and forcibly entering, or had unlawfully and forcibly entered, a dwelling, ... business, place of employment or the immediate premises thereof or if that person had unlawfully removed or was attempting to unlawfully remove another against the other person’s will from that dwelling, ... business, place of employment or the immediate premises thereof and the person who used defensive force knew or had reason to believe that the forcible entry or unlawful and forcible act was occurring or had occurred”). Westbrook argues that, as an employee of Buddy’s, he had the right to defend Buddy’s property.
 

 ¶ 14. We disagree. In
 
 Lester v. State,
 
 this Court noted the following:
 

 The law regarding defense of habitation is not such that a mere trespasser, having been once warned to vacate the premises, may thereafter be killed by the premises’ owner with impunity if he fails to leave the property soon enough to satisfy the desires of the owner. The law contemplates, rather, that deadly force may only be employed to repel a trespasser who demonstrates the apparent purpose of assaulting or offering violence to an occupant or committing some other crime on the premises.
 

 862 So.2d 582, 585(¶ 11) (Miss.Ct.App.2004) (citing
 
 Bowen v. State,
 
 164 Miss. 225, 227, 144 So. 230, 232 (1932)).
 

 ¶ 15. The evidence showed that Sharpe was not “in the process of unlawfully and forcibly entering, or had unlawfully and forcibly” entered Buddy’s when Westbrook began attacking Sharpe. Moreover, there was no evidence that Sharpe was going commit an assault, offer violence to an occupant of Buddy’s, or commit some other crime on the premises while he was in the parking lot at Buddy’s. The evidence only established that Sharpe in the parking lot, unarmed, when Westbrook began attacking him. Therefore, we find that Westbrook’s killing of Sharpe cannot be justified under the “Castle Doctrine.” Accordingly, this issue is without merit.
 

 B. Weight of the Evidence
 

 ¶ 16. In determining whether a jury’s verdict is against the overwhelming weight of the evidence, this Court must accept as true the evidence that supports the verdict and will reverse only when convinced that the circuit court has abused its discretion in failing to grant a new trial.
 
 Brown v. State,
 
 995 So.2d 698, 702(¶ 13) (Miss.2008). During such an inquiry, we afford the State the benefit of all favorable inferences that may reasonably be drawn from the evidence.
 
 Id.
 
 Reversal on these grounds is appropriate only when the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.
 
 Id.
 

 ¶ 17. Westbrook argues that his actions were spontaneous and not premeditated, which would support a manslaughter conviction. He cites to several cases involving “juke-joint killings” where the supreme court has reversed a murder conviction and remanded the case for resentencing for manslaughter.
 

 
 *834
 
 ¶ 18. The cases cited by Westbrook are distinguishable from the current factual scenario. In
 
 Dedeaux v. State,
 
 630 So.2d 30, 31 (Miss.1993), witnesses gave conflicting statements between their testimony at trial and the statements they gave to police. Similarly, in
 
 Clemons v. State,
 
 473 So.2d 943, 943 (Miss.1985), the court found the conflicting statements made it virtually impossible to reconstruct what happened on the night of the killing.
 

 ¶ 19. In the case at bar, the inconsistent statements are not to the same degree as the statements in
 
 Dedeaux
 
 and
 
 Clemons.
 
 There were inconsistent statements about whether Westbrook was inside or outside when he came to retrieve the bat, whether Sharpe fell to the ground after the first hit, and about Sharpe’s position when Sharpe was struck the second time. There was also an inconsistent statement on whether Sharpe was standing, then walking toward Westbrook, or was pulled out of his truck before being struck by Westbrook. However, all of the witnesses testified that Westbrook struck an unarmed Sharpe in the head three times with a baseball bat.
 

 ¶ 20. “Conflicting testimony does not evince overwhelming evidence; [w]here the verdict turns on the credibility of conflicting testimony and the credibility of the witnesses, it is the jury’s duty to resolve the conflict.”
 
 Brown,
 
 995 So.2d at 702(¶ 13) (citing
 
 Nicholson v. State,
 
 523 So.2d 68, 71 (Miss.1988)). The jury heard the conflicting statements and resolved the statements in favor of the State.
 

 ¶ 21. Westbrook also cites two other cases involving “juke-joint” killings to support his assertion. In
 
 Wells v. State,
 
 305 So.2d 333, 334 (Miss.1974), there were no eyewitnesses to the killing. Also, in
 
 Tait v. State,
 
 669 So.2d 85, 87 (Miss.1996), the defendant was found sobbing and holding the victim, saying, “I killed him. Oh, my God, I killed him. I shot him.”
 

 II 22. Unlike the factual scenario in
 
 Wells,
 
 three eyewitnesses testified that they saw Westbrook strike Sharpe in the head three times with the baseball bat. Contrary to
 
 Tait,
 
 Westbrook was not conciliatory after the attack occurred. Witnesses testified that Westbrook re-entered Buddy’s after the attack and warned the eyewitnesses that “they did not see anything.” When the police arrived at Buddy’s, Westbrook denied ever touching Sharpe.
 

 1123. Westbrook armed himself with a baseball bat and attacked Sharpe, who, all eyewitnesses testified, was unarmed. Dr. McGarry stated the first blow to Sharpe’s head would have rendered him unconscious, yet Westbrook continued to strike Sharpe two more times. Given the evidence presented, we find that Westbrook’s murder conviction does not sanction an unconscionable injustice. This issue is ■without merit.
 

 II. REFUSAL OF WESTBROOK’S MANSLAUGHTER JURY INSTRUCTION
 

 1124. Westbrook proffered jury instruction D-19, which stated:
 

 The Court instructs the jury that under the law of the State of Mississippi, the offense of Manslaughter has been defined as:
 

 to unnecessarily kill another, either while resisting an attempt by such other person to commit any felony, or to do any unlawful act, or after such attempt shall have failed, or the
 

 killing of a human being, without malice, in the heat of passion, but in a cruel or unusual manner, or by the use of a dangerous weapon, without
 
 *835
 
 authority of law, and not in necessary self-defense,
 

 or as
 

 every other lolling of a human being, by the act, procurement, or culpable negligence of another, and without authority of law.
 

 This instruction encompasses three different manslaughter theories: heat-of-passion manslaughter, resisting an effort to commit felony or an unlawful act, and culpable-negligence manslaughter.
 
 [1]
 
 We will address each theory separately.
 

 ¶ 25. The supreme court in
 
 Wallace v. State,
 
 10 So.3d 913, 916(¶9) (Miss.2009) (citations omitted) set out our standard of review for jury instructions as follows:
 

 The Court does not single out any instruction or take instructions out of context; rather, the instructions are to be read together as a whole. A defendant is entitled to have jury instructions given which present his theory of the case. This entitlement is limited, however, in that the court is allowed to refuse an instruction which incorrectly states the law, is covered fairly elsewhere in the instructions, or is without foundation in the evidence.
 

 A. Heat-oj-Passiou Manslaughter
 

 ¶ 26. Heat-of-passion manslaughter is defined as:
 

 a state of violent and uncontrollable rage engendered by a blow or certain other provocation given, which will reduce a homicide from the grade of murder to that of manslaughter. Passion or anger suddenly aroused at the time by some immediate and reasonable provocation, by words or acts of one at the time.
 

 The term includes an emotional state of mind characterized by anger, rage, hatred, furious resentment or terror.
 

 McCune v. State,
 
 989 So.2d 310, 319(1115) (Miss.2008) (citations omitted). West-brook argues that the court should have allowed a heat-of-passion jury instruction because: Sharpe and Westbrook had a verbal argument while Sharpe was getting escorted out of Buddy’s; Sharpe was loud and aggressive; and Sharpe was allegedly walking toward Westbrook immediately prior to Westbrook’s hitting Sharpe with the baseball bat.
 

 ¶ 27. As stated above, Sharpe and Westbrook exchanged words while Sharpe was being escorted out of the bar by Westbrook. Our supreme court has stated that “words alone and disagreements among people are not enough to invoke the passion required for this defense. Mere words, no matter how provocative, are insufficient to reduce an intentional and unjustifiable homicide from murder to manslaughter.”
 
 Phillips v. State,
 
 794 So.2d 1034, 1037(¶10) (Miss.2001) (citations omitted). Therefore, the fact that Westbrook and Sharpe exchanged words while Sharpe was being escorted out of the bar, and possibly prior to the attack, is insufficient to warrant a heat-of-passion jury instruction.
 

 ¶ 28. There was also conflicting testimony on whether Sharpe was walking toward Westbrook prior to being hit, and whether Sharpe was sitting or standing. However, this Court has also found that “[p]ushing or shoving is also insufficient to require the [heat-of-passion] instruction absent testimony that the defendant was acting out of violent or uncontrollable rage.”
 
 Burton v. State,
 
 999 So.2d 379,
 
 *836
 
 382(¶ 11) (Miss.Ct.App.2008). Assuming that Sharpe was walking toward West-brook when Westbrook exited the bar, there was no evidence presented that Westbrook was in a state of violent or uncontrollable rage.
 

 ¶ 29. Additionally, when a defendant arms himself prior to an encounter with the victim and in preparation for an encounter with the victim, a heat-of-passion defense will not be supported.
 
 Dizon v. State,
 
 749 So.2d 996, 1003(¶ 37) (Miss.1999) (Smith, J., dissenting). Upon learning that Sharpe was still outside Buddy’s, Westbrook went behind the bar, stated that he was going to jail that night, armed himself with a baseball bat, walked directly outside, and attacked Sharpe with the baseball bat. Westbrook clearly intended to attack Sharpe with the baseball bat when he learned that Sharpe was still outside Buddy’s. He had sufficient time to contemplate hitting Sharpe, which evidences a deliberate design murder, not heat-of-passion manslaughter.
 
 See Givens v. State,
 
 967 So.2d 1, 12(¶ 34) (Miss.2007). Accordingly, the trial court did not err in refusing Westbrook’s proffered jury instruction for heat-of-passion manslaughter.
 

 B. Justifiable Homicide
 

 ¶ 30. Westbrook argues the trial court erred in refusing a justifiable-homicide jury instruction. Mississippi Code Annotated section 97-3-31 (Rev.2006) states that an “unnecessary killing, either while resisting an attempt by such other person to commit any felony, or to do any unlawful act, or after such attempt shall have failed,” is manslaughter. Westbrook states that Sharpe was trespassing on Buddy’s property after being removed from the bar, constituting an unlawful act. Westbrook argues that this trespassing gave him the right to resist the unlawful act, making Sharpe’s death manslaughter rather than murder.
 

 ¶ 31. The supreme court has ruled that in order for this section to be applicable, the killing must be done while resisting an attack by the deceased which is done without malice or premeditated design.
 
 Wells,
 
 305 So.2d at 336.
 

 ¶ 32. Here, as we stated above, this Court cannot say that this killing was done without malice or premeditated design. After hearing that Sharpe was outside Buddy’s, Westbrook went behind the bar, grabbed a baseball bat, stated that he was going to jail that night, and went outside and attacked Sharpe. This evidences a malicious intent and a premeditated design to attack Sharpe with the baseball bat.
 

 ¶ 33. Additionally, malice or deliberate design may be inferred from the use of a deadly weapon.
 
 Phillips,
 
 794 So.2d at 1037(¶ 11) (citations omitted). This Court has stated that a baseball bat can be deemed a deadly weapon, especially when used in the manner as it was used by Westbrook.
 
 See McLarty v. State,
 
 842 So.2d 590, 593(¶ 12) (Miss.Ct.App.2003);
 
 Adams v. State,
 
 726 So.2d 1275, 1278(¶ 6) (Miss.Ct.App.1998).
 

 ¶ 34. Accordingly, the trial court did not err in refusing to give a justifiable-homicide jury instruction when Westbrook acted with malice and a premeditated design in striking Sharpe.
 

 C. Culpable-Negligence Manslaughter
 

 ¶ 35. After the judge and both attorneys engaged in a long discussion about which forms of manslaughter could be read to the jury, the court asked Westbrook’s attorney which form of manslaughter he wanted the jury to be instructed on, to which Westbrook’s attorney answered culpable-negligence manslaughter. On appeal, Westbrook argues that the trial court
 
 *837
 
 compelled him into choosing culpable-negligence manslaughter over the other two manslaughter instructions. This, he argues, is reversible error.
 

 ¶ 36. On our review of the record, we do not find that Westbrook’s attorney was compelled into selecting culpable-negligence manslaughter as his form of manslaughter instruction. When the trial court began discussing proffered jury instruction D-19, the prosecutor stated he did not think the evidence supported a manslaughter instruction. The trial court disagreed and a conversation ensued about culpable-negligence manslaughter, heat-of-passion manslaughter, and depraved-heart murder. The trial court did state that it believed the facts supported a culpable-negligence manslaughter jury instruction in place of a heat-of-passion manslaughter jury instruction. The following exchange subsequently took place:
 

 [The Court]: [Do] you want a lesser— included manslaughter [jury instruction]?
 

 [Westbrook’s attorney]: Yes, sir.
 

 [The Court]: Under which subsection? Every other killing?
 

 [Westbrook’s attorney]: Every other killing.
 

 [The Court]: Culpable negligence?
 

 [Westbrook’s attorney]: Yes, sir.
 

 The trial court then instructed West-brook’s attorney to prepare a jury instruction outlining the elements for culpable-negligence manslaughter.
 

 ¶ 37. The trial court gave Westbrook’s attorney the option of choosing which manslaughter instruction he wanted to be given to the jury. His attorney could have selected any other form of manslaughter that was supported by the evidence. He chose culpable-negligence manslaughter, which was given to the jury. We do not find that Westbrook’s attorney was compelled or forced into choosing a culpable-negligence manslaughter instruction. Accordingly, this issue is without merit.
 

 III. DEPRAVED-HEART MURDER AND CULPABLE-NEGLIGENCE MANSLAUGHTER
 

 ¶ 38. Westbrook argues the court’s jury instruction on depraved-heart murder and culpable-negligence manslaughter did not properly and completely state and explain the law, conflicted with each other, and confused the jury. He argues this violated his Fifth, Sixth, and Fourteenth Amendment to the United State Constitution.
 

 ¶39. Mississippi Code Annotated section 97-3-19(l)(b) (Rev.2006) defines depraved-heart murder as a killing that is “done in the commission of an act eminently dangerous to others and evincing a depraved heart, regardless of human life, although without any premeditated design to effect the death of any particular individual.”
 

 ¶ 40. “Culpable negligence is defined in [Mississippi Code Annotated section] 97-3-47 as negligence of a degree so gross as to be tantamount to a wanton disregard of, or utter indifference to, the safety of human life.”
 
 Hurns v. State,
 
 616 So.2d 313, 320 (Miss.1993).
 

 ¶ 41. “Depraved-heart murder and culpable-negligence manslaughter are distinguishable simply by degree of mental state of culpability. In short, depraved-heart murder involves a higher degree of recklessness from which malice or deliberate design may be implied.”
 
 Windham v. State,
 
 602 So.2d 798, 801 (Miss.1992).
 

 ¶ 42. Upon reading the jury instructions as a whole, we find the jury was properly informed on depraved-heart murder and culpable-negligent manslaughter. The court gave depraved-heart murder jury instruction S-4 which stated that if
 
 *838
 
 the jury found that Westbrook killed Sharpe “while engaged in the commission of an act eminently dangerous to others and evincing a depraved heart, disregarding the value of human life, whether or not he had any intention of actually killing ... Sharpe,” then the jury should find West-brook guilty of murder. Jury instruction D-51 defined culpable negligence as the “conscious and wanton or reckless disregard of the probabilities of fatal consequences to others as a result of the willful creation of an unreasonable risk thereof. It is negligence of a degree so gross as to be tantamount to a wanton disregard of or utter indifference to the safety of human life.”
 
 [2]
 
 This jury instruction was given in addition to D-50-A, which was a culpable-negligence manslaughter instruction. Accordingly, we find the jury instructions given fully explained the difference between depraved-heart murder and culpable-negligence manslaughter. This issue is without merit.
 

 IV. SELF-DEFENSE JURY INSTRUCTIONS
 

 ¶ 43. Westbrook argues that the trial court erred in refusing his self-defense jury instructions. Westbrook states the jury could have reasonably found that he acted in self-defense because: (1) Sharpe was physically larger than West-brook; (2) one witness stated that Sharpe was being “loud and aggressive;” and (3) one witness testified that Sharpe stated, “you do not want any of this son,” and began walking toward Westbrook.
 

 ¶ 44. However, Westbrook’s counsel withdrew his request to instruct the jury on self-defense and, thus, waived West-brook’s right to attack the denial of the instructions on appeal.
 
 Turner v. State,
 
 910 So.2d 598, 603(¶ 19) (Miss.Ct.App. 2005). Procedural bar aside, there was insufficient evidence to support a self-defense instruction. Witnesses testified that Sharpe was either sitting in his truck, standing still, or walking toward West-brook prior to Westbrook hitting Sharpe. All the witnesses testified that Sharpe was unarmed prior to the attack. Wesfbrook’s strike completely incapacitated Sharpe, leaving him defenseless for the other two blows to his head. Therefore, we find that there was no evidentiary basis for the trial court to grant a self-defense jury instruction. This issue is without merit.
 

 V. INEFFECTIVE ASSISTANCE OF COUNSEL
 

 ¶ 45. “In order to prevail on the issue of whether his defense counsel’s performance was ineffective, [the petitioner] must prove that his counsel’s performance was deficient and that he was prejudiced by counsel’s mistakes.”
 
 Kinney v. State,
 
 737 8o.2d 1038, 1041(¶ 8) (Miss.Ct.App.1999) (citing
 
 Strickland v. Washington,
 
 466 U.S. 668, 687-96, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). “There is a strong but rebuttable presumption that counsel’s conduct fell within the wide range of reasonable professional assistance.”
 
 Id.
 
 (citing
 
 Moody v. State,
 
 644 So.2d 451, 456 (Miss.1994/). Additionally, a petitioner is required to “allege both prongs of the above test with specific detail.”
 
 Coleman v. State,
 
 979 So.2d 731, 735(¶ 15) (Miss.Ct.App.2008) (citing
 
 Brooks v. State,
 
 573 So.2d 1350, 1354 (Miss.1990)).
 

 ¶ 46. Westbrook offers a plethora of reasons why his attorney rendered ineffective assistance of counsel. We dismiss many of Westbrook’s assertions as being part of defense counsel’s trial strategy: counsel did not make an opening statement; counsel failed to call witnesses; counsel failed to inform the trial court that Westbrook did not have a criminal record; and counsel stated that Westbrook “killed the situation” in his closing argument.
 
 See
 
 
 *839
 

 Bennett v. State,
 
 933 So.2d 930, 943(¶ 36) (Miss.2006);
 
 Bolton v. State,
 
 734 So.2d 307, 309-10(115) (Miss.Ct.App.1999).
 

 ¶ 47. Westbrook also claims that his counsel was ineffective because he did not adequately explain the law of self-defense to him. However, Westbrook does not offer any support for his proposition besides his assertion. Our supreme court has stated that in order for an appellate court to address a claim of ineffective assistance of counsel on direct appeal, the record must be fully developed to support the assertion.
 
 Wilcher v. State,
 
 863 So.2d 776, 825 (¶ 171) (Miss.2003). Therefore, because the record does not provide any support for Westbrook’s claim that his counsel failed to sufficiently explain the law of self-defense to him, this Court will not address the argument.
 
 See
 
 M.R.A.P. 22(b).
 

 ¶ 48. Westbrook also argues that his counsel was ineffective because he did not submit a manslaughter jury instruction based upon mutual combat. There was no evidence presented that Westbrook and Sharpe were engaged in mutual combat at the time Westbrook brutally beat Sharpe. Witnesses testified that, when Sharpe was being removed from the bar, there was only a verbal exchange, and no physical exchange took place. Witnesses also testified that, at most, Sharpe was walking toward Westbrook when Westbrook first struck Sharpe, but Sharpe was not cai*ry-ing anything in his hands when he approached Westbrook in the parking lot. Witnesses testified that Sharpe did not try to fight back once attacked by Westbrook. Dr. McGarry’s testimony indicated that the initial blow Sharpe received would have knocked him unconscious, leaving him defenseless. We cannot see how West-brook and Sharpe could have been engaged in mutual combat given these facts. Accordingly, Westbrook’s counsel was not ineffective for failing to submit a manslaughter jury instruction on mutual combat when there was no evidence to support such an instruction.
 

 ¶ 49. The remaining assertions by Westbrook that his counsel was ineffective have been addressed in previous issues in this opinion, and we find that they are matters of trial strategy: defense counsel did not present manslaughter theories to the jury; defense counsel did not submit proper jury instructions on culpable-negligence manslaughter and depraved-heart murder; defense counsel withdrew a self-defense jury instruction, defense counsel failed to submit a justifiable-homicide jury instruction.
 
 See Myhand v. State,
 
 981 So.2d 988, 992(¶ 10) (Miss.Ct.App.2007) (the decision whether to request certain jury instructions is a matter of trial strategy)-
 

 ¶ 50. Westbrook also argues the aggregate effect of these alleged errors results in a cumulative error that requires a reversal of his conviction. However, where no error by trial counsel can be found in these individual instances, a cumulative error cannot exist.
 
 See Gray v. State,
 
 887 So.2d 158, 173(¶44) (Miss.2004). Accordingly, this issue is without merit.
 

 1151. THE JUDGMENT OF THE HARRISON COUNTY CIRCUIT COURT OF CONVICTION OF MURDER AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HARRISON COUNTY.
 

 KING, C.J., LEE, P.J., IRVING, GRIFFIS, BARNES, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ., CONCUR.
 

 [1]
 

 . Contrary to Westbrook's assertion in his brief, proffered jury instruction D-19 only contains three theories of manslaughter, not four theories. An imperfect self-defense theory was not submitted in D-l 9.
 
 See Chandler v. State,
 
 946 So.2d 355, 362(¶ 29) (Miss.2006) (citations omitted) (explaining the imperfect self-defense jury instruction).
 

 [2]
 

 . D-51 is marked as refused in the record. However, the trial transcript and the parties' briefs lead us to conclude that D-51 was, in fact, given.