# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2023-KA-01254-COA

**JOHN CHADWICK GRIMES**                                          **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                            **APPELLEE**

DATE OF JUDGMENT:                   10/19/2023
TRIAL JUDGE:                        HON. JOHN R. WHITE
COURT FROM WHICH APPEALED:          ALCORN COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:             LAURANCE NICHOLAS CHANDLER
                                    ROGERS
ATTORNEY FOR APPELLEE:              OFFICE OF THE ATTORNEY GENERAL
                                    BY: BARBARA WAKELAND BYRD
DISTRICT ATTORNEY:                  JOHN DAVID WEDDLE
NATURE OF THE CASE:                 CRIMINAL - FELONY
DISPOSITION:                        AFFIRMED - 01/21/2025
MOTION FOR REHEARING FILED:

**BEFORE WILSON, P.J., LAWRENCE AND EMFINGER, JJ.**

**LAWRENCE, J., FOR THE COURT:**

¶1.     John Chadwick Grimes was convicted of manslaughter and sentenced in the Alcorn County Circuit Court. In his 2022 appeal of that conviction, Grimes argued, among other things, that the jury's verdict may have been influenced by alleged juror misconduct. In 2023, this Court remanded the case to the circuit court for an evidentiary hearing on the issue of possible juror misconduct. The circuit court conducted the evidentiary hearing and questioned each juror individually on possible misconduct that may have occurred. At the conclusion of the hearing, the circuit court found that no conduct by the jurors had prejudiced Grimes. Aggrieved, Grimes appeals for a second time. Upon review, we affirm.

**FACTUAL AND PROCEDURAL HISTORY**

¶2.     As stated above, Grimes's direct appeal was previously before this Court. *See Grimes v. State*, 361 So. 3d 179 (Miss. Ct. App. 2023). In summary, on April 28, 2017, Grimes was involved in an altercation with multiple people, one of whom was Greg Seago. *Id.* at 183-84 (¶¶2-11). At one point, Grimes "struck" Seago, who "fell and his head hit the pavement." *Id.* at 185 (¶11). "Grimes jumped on him and threw a few more punches before he realized Seago was offering no resistance, and Grimes got up." *Id.* Seago was transported to the hospital, "where he died on May 19, 2017." *Id.* at (¶13). Grimes was indicted for second-degree murder on September 6, 2017. *Id.* at (¶14). Grimes's trial began on April 19, 2019. *Id.* at (¶15). For purposes of this appeal, we recite the remaining background information:

> During deliberations, the jury asked the circuit court for a list of definitions for "depraved heart." The State suggested a definition found in the case of *Westbrook v. State*, [29 So. 3d 828 (Miss. Ct. App. 2009),] to which the defense agreed. The circuit court then submitted an instruction that read:
>
> > 'The Court instructs that depraved-heart murder and culpable negligence manslaughter are distinguishable simply by degree of mental state of culpability. In short, depraved-heart murder involves a higher degree of recklessness from which malice or deliberate design may be implied.'
>
> After further discussion, the jury returned a verdict of 'not guilty' on the charge of second-degree murder but convicted Grimes on the lesser-included offense of manslaughter.
>
> . . . .
>
> After the trial, Grimes's attorney wrote to the jurors and invited them to discuss the case with him. One juror, Janice Parrish, responded. Parrish said that the jury apparently had been dissatisfied with the Court's supplemental instruction and that several of the jurors did their own internet search on their cell phones for definitions of 'depraved heart.' According to Grimes's

2

attorney, the jurors also searched for 'other terms foreign to them.'  The jury then went further and searched the internet for the possible sentences that Grimes could receive.  After talking for several minutes with Juror Parrish, Grimes's attorney recorded the rest of his conversation and included it in Grimes's motion for JNOV[.]

. . . .

On January 14, 2022, the circuit court summarily denied Grimes's motion; however, on the issue of juror misconduct, the court specifically stated:

> 'Following the trial and conviction, but prior to sentencing, defense counsel was contacted by Juror No. 5, Janice Parrish, around May 12, 2021.  The record reflects that Ms. Parrish notified defense counsel of potential juror misconduct, by which some juror(s) "googled" the lay definition of depraved heart, as well as the potential sentences for second degree murder and manslaughter.'

. . . .

> [T]he circuit court found that the common definition of 'depraved heart' and the potential sentencing discrepancies 'are not the type of improper extraneous information that have been found to invalidate jury verdicts in our case law.  There is nothing inherently prejudicial in the definitions or as applied to this case.'  Furthermore, the circuit court held, the content which was 'googl[ed]' is clearly something within the collective intelligence and common knowledge of any jury.  Finally, the court said that '[t]here is a very strong legal presumption that jurors follow the law, as they are instructed by the court.  To engage in speculation otherwise, without a sound basis, would be contrary to the foundations of our jury system.'

*Id.* at 361 So. 3d at 186-90 (¶¶18-22) (citations, footnotes, and paragraph numbering omitted).

¶3.     On January 28, 2022, Grimes appealed his conviction and sentence.  *Id.* at 189 (¶23).

On May 16, 2023, this Court issued an opinion on the matter.  This Court held that Grimes

"made a good-cause showing of juror misconduct, [so] the circuit court erred in summarily

3

denying Grimes's request for a new trial without holding an investigative hearing." *Id.* at 201 (¶64). The case was remanded "for the circuit court to convene a hearing of the jurors, determine the specific materials the jurors reviewed during their independent internet search of legal terms and sentences, and make the appropriate finding as to whether this information reasonably could have affected the jury's verdict." *Id.* Finally, this Court instructed the circuit court to grant Grimes a new trial should it find that the jury's verdict had been "influenced by extraneous information[.]" *Id.* If not, the court would "make on-the-record findings and enter a final order disposing of the request for a new trial." *Id.*

¶4. Accordingly, the circuit court conducted the evidentiary hearing. The court recalled all twelve jurors who sat for Grimes's trial for questioning on the record. On September 19, 2023, eleven members of the jury testified in person. On September 22, 2023, the remaining juror (who had moved out of state) testified via Zoom. All twelve jurors were asked some variation of the same questions, which had been agreed to by Grimes and the State.

¶5. The jurors were first asked, "During your time as a juror in this case, are you aware of anyone using a phone or any other device to research the definition of depraved heart or any other legal term?" Nine jurors answered in the negative, while three jurors answered in the affirmative. As for those three jurors, Juror Lowery "remember[ed] somebody getting their phone out" but did not know "what they Googled or searched or anything." Juror Parish responded, "Yes . . . [t]hey looked . . . . I think they Googled it[.] . . . [W]hen you hear the word depraved heart everybody has a definition that comes to their mind. . . . And somebody Googled it and then we . . . decided, well, we better get clarification on that[.] . . . We sent

4

the note out[.]" Finally, Juror Mancell stated, "The only thing I remember is somebody did bring in a list of definitions of a bunch of words. And I don't want to point anybody out, but I told them -- you know, they were sitting beside me, that we couldn't use that, so they put it away right then. But that's the only thing I remember like that."

¶6. The jurors were then asked, "During your time as a juror in this case, are you aware of anyone using a phone or other device to research possible sentences in this case?" Two jurors indicated they were aware. Juror Parish stated, "I think somebody looked at – like, one time somebody said what is the – what would be the sentence in Mississippi for something, maybe it was the murder, whatever they had asked for . . . . I think somebody looked up what – the Mississippi – the sentence in Mississippi for whatever the District Attorney was asking for." Juror Mancell testified, "Yeah, I remember it. But I think that was done after we went in the courtroom and gave the verdict and then we come back and I remember them looking it up." Nine remaining jurors said they were not aware of any cell phone use, while one stated he could not remember.

¶7. Finally, the jurors were asked, "Is there any other outside source brought to bear in the jury room?" That question was rephrased as, "[W]as there ever any Internet, anybody call somebody, anybody call you, anything like that going on in the jury room?" Juror Johnson stated, "I, myself, had checked on my kids with my phone." Juror Lowery testified, "I only got my phone out of my purse to check the time." Nine of the remaining jurors stated they were not aware of any such activity, while one stated he could not remember.

¶8. Following the hearing, Grimes filed a renewed motion for a new trial on September

29, 2023.  On October 19, 2023, the circuit court entered a final order denying Grimes's motion for acquittal and for a new trial.  The court made the following findings in reaching this decision:

1. The information considered by the jury in this cause allegedly consisted of some outside knowledge or research into the definitions of depraved heart, which Juror Parrish believed to have occurred when other jurors were using their phones; however, this was **contradicted by the testimony of jurors claiming they were using their phones to either check on their children, or to check the time**, and **no one admitted to performing independent, external research on depraved heart.** Additionally, Juror Mancell testified that another juror brought a handwritten list of definitions for depraved heart into the jury room, but he personally instructed this juror to put the list away because they could not use them. Furthermore, Juror Parrish testified that the independent depraved heart definitions were discussed prior to the jury's request for proper instruction by the Court on the definition of depraved heart. Finally, this Court finds that **any possible independent research performed related to the lengths of punishment (i.e., sentencing) involving the charges against Defendant were allegedly performed after the jury had rendered its verdict**, and was awaiting dismissal, which was precisely the testimony of Juror Mancell.

2. The information related to both the definitions of depraved heart, and possible sentences **could not have reasonably affected the jury's verdict**. On the issue of the external definitions related to depraved heart, the testimony from Juror Parrish was that any independent research, and inadmissible discussion, of the same occurred **prior** to the jury's seeking the Court's clarification of the definition that should be applied in the case *sub judice.* Once the Court provided its supplemental instruction on depraved heart, the **overwhelming testimony is that the jurors only applied the instructions of the Court and the evidence produced at trial in reaching any conclusions**. Likewise, Juror Mancell's testimony was that, while there were independent, handwritten definitions of depraved heart brought into the jury room, **these definitions were not seen by any other member of the jury**, **no other juror admitted to seeing or producing them**, and again, **the overwhelming testimony was that the jury followed the instructions of law and applied the same to the evidence presented during the trial**. Furthermore, as it pertains to the

6

jury's research into possible sentences, the most precise testimony, which was provided by Juror Mancell, was that **such research was performed after the jury had rendered its verdict**, thereby estopping any application of this research to the outcome of deliberations. Finally, **to the extent that any misconduct may have occurred and been prejudicial, such conduct was to Defendant's benefit**, because the verdict rendered did not conclude that Defendant acted with a depraved heart (i.e., the jury found Defendant guilty of manslaughter instead of incorrectly applying a definition of depraved heart and finding him guilty of second degree murder), or that he would not (or could not) be sentenced to a harsher sentence than the lowest offense charged (i.e., manslaughter).

(Emphasis added). On October 30, 2023, Grimes appealed.

**STANDARD OF REVIEW**

¶9. Grimes's notice of appeal concerns previous motions in addition to the court's final order denying him a new trial. Pursuant to this Court's opinion issued on May 16, 2023, the circuit court was instructed to "grant Grimes a **new trial** should it find that the jury's verdict had been influenced by extraneous information," and, "[i]f not, the court would make on-the-record findings and enter a final order disposing of the request for a **new trial**." *Grimes*, 361 So. 3d at 201 (¶64) (emphasis added). Therefore, we will only address the circuit court's order denying Grimes a new trial.

¶10. "The grant or denial of a motion for a new trial is a matter entrusted to the lower court's sound discretion, and this Court will only reverse the denial of a new trial when we are convinced that the lower court abused its discretion." *Perkins v. Dauterive*, 882 So. 2d 773, 777 (¶12) (Miss. Ct. App. 2004) (citing *Green v. Grant*, 641 So. 2d 1203, 1207 (Miss. 1994)). Additionally, this Court reviews the evidence "in a light most favorable to the verdict." *Id.* (citing *Wilson v. State*, 276 So. 3d 1241, 1262 (¶57) (Miss. Ct. App. 2018)).

7

**ANALYSIS**

¶11.    The circuit court followed this Court's mandate to the letter, "conven[ing] a hearing of the jurors, determin[ing] the specific materials the jurors reviewed during their independent internet search of legal terms and sentences, and mak[ing] the appropriate finding as to whether this information reasonably could have affected the jury's verdict." *Grimes*, 361 So. 3d at 201 (¶64).   All twelve jurors provided testimony concerning the happenings of the jury room.  Of those twelve jurors, only three testified to seeing a phone or other device being used to research the definition of "depraved heart."  Only two jurors testified to being aware of some kind of research regarding sentencing.  Finally, only two jurors testified to ever seeing a cell phone or other device being used in the jury room.  In total, only four individual jurors testified to seeing any prohibited activity occur in the jury room.

¶12.    The circuit court addressed all these facts in the final order denying a new trial.  The court found that the allegation of research on "depraved heart" was "contradicted by the testimony of jurors claiming they were using their phones to either check on their children, or to check the time, and no one admitted to performing independent, external research on depraved heart."   As for the handwritten list of definitions, Juror Mancell "personally instructed th[at] juror to put the list away[.]"  The order also stated that any discussion of the "independent depraved heart definitions" occurred "prior to the jury's request for proper instruction by the [c]ourt on the definition of depraved heart."  Likewise, the order stated that "any possible independent research performed . . . involving the charges against Grimes were

8

allegedly performed after the jury had rendered its verdict." Following this reasoning, the circuit court held that the jury's verdict could not have been "reasonably affected" and that the "overwhelming testimony" showed "the jurors only applied the instructions of the [c]ourt and the evidence produced at trial in reaching any conclusions."

¶13. Finally, the circuit court addressed whether Grimes had truly been prejudiced by these events. The court found that any sort of misconduct that "may have occurred . . . was to [Grimes]'s benefit, because . . . the jury found [him] guilty of manslaughter instead of incorrectly applying a definition of depraved heart and finding him guilty of second degree murder," meaning Grimes could not "be sentenced to a harsher sentence than the lowest offense charged (i.e., manslaughter)." The circuit court held the required evidentiary hearing, thoughtfully considered each juror's testimony (as evidenced in his final order), and came to a decision to deny Grimes's motion for a new trial.

¶14. Again, "this Court will only reverse the denial of a new trial when we are convinced that the lower court abused its discretion." *Perkins*, 882 So. 2d at 777 (¶12) (citing *Green*, 641 So. 2d at 1207). This Court will find an abuse-of-discretion if we have "definite and firm conviction that the court below committed a clear error of judgment and the conclusion it reached upon a weighing of the relevant factors." *McCord v. Healthcare Recs. Inc.*, 960 So. 2d 399, 405 (¶13) (Miss. 2007) (quoting *Ill. Cent. R.R. Co. v. McDaniel*, 951 So. 2d 523, 526 (Miss. 2006)). There is simply nothing in the record before us evidencing "a clear error of judgment[.]" *Id.* The circuit court's order clearly explains the reasoning used to reach the decision, which was supported by the testimony produced at the evidentiary hearing, and we

find no abuse of discretion in denying the motion for a new trial.[1]

## CONCLUSION

¶15. This Court finds that the circuit court did not abuse its discretion by denying Grimes a new trial and affirms.

¶16. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., WESTBROOKS, McDONALD, McCARTY AND EMFINGER, JJ., CONCUR. WEDDLE AND ST. PÉ, JJ., NOT PARTICIPATING.**

---

[1] This State's appellate courts have previously addressed allegations involving juror misconduct, and the results are in line with the circuit judge's finding in this case that a new trial was not required. *See Scates v. State*, 388 So. 3d 564, 579 (¶¶44-45) (Miss. Ct. App. 2023) (holding that alleged "improper influence occur[ring] during deliberations by other jurors" did not necessitate a new trial); *Hayes v. Entergy Miss. Inc.*, 871 So. 2d 743, 747-48 (¶¶12-14) (Miss. 2004) (finding testimony by three jurors who felt "pressured into making a decision by other members of the jury who had grown impatient with the deliberation process" did not require any "further investigation of alleged jury misconduct")); *Rutland v. State*, 60 So. 3d 137, 144 (¶27) (Miss. 2011) (finding that a trial court's decision that a "juror's use of [a] dictionary definition" was not prejudicial to defendant was "in accord with our precedent").