862 So.2d 582 (2004)
James D. LESTER, a/k/a J.W. Lester, Appellant
v.
STATE of Mississippi, Appellee.
No. 2001-KA-00217-COA.
Court of Appeals of Mississippi.
January 6, 2004.
*583 Thomas H. Pearson, Clarksdale, attorney for appellant.
Office of the Attorney General by Billy L. Gore, attorney for appellee.
Before McMILLIN, C.J., BRIDGES and THOMAS, JJ.
McMILLIN, C.J., for the Court.
¶ 1. James Lester was convicted of murder by a Tunica County Circuit Court jury in the shooting death of his friend, Roger Marple. Lester has appealed the conviction. In his appeal, he raises two issues for consideration. First, he contends that the evidence was insufficient as a matter of law to sustain a murder conviction. Rather, he argues, the only two possible verdicts based on the evidence were acquittal on the basis of self-defense or guilty of manslaughter for using excessive force in the exercise of his right to defend his home against a trespasser. Alternatively, he claims that the trial court committed reversible error in denying two proposed defense instructions the purpose of which were to fully acquaint the jury with the applicable legal principles pertaining to one's right to defend his home place. We find no reversible error and affirm Lester's conviction.

I.

Facts
¶ 2. The State presented evidence that would support the following version of events. Lester and Marple and Marple's wife drove into the parking lot of a beer tavern when they were accosted by Lester's wife and grown daughter who pulled into the parking lot behind them. After an exchange of unpleasantries, Lester drove to his home, followed by his wife and daughter, and went to bed. Shortly thereafter, Marple arrived at the home and was admitted by Lester's wife. Marple's purpose was to apologize to Mrs. Lester. Lester was awakened and went into the *584 room armed with a pistol. He became agitated and threatened to kill the people in the room, including his daughter, as well as himself. Marple then began attempts to calm Lester down from his agitated state but Lester would not be calmed and began ordering Marple to leave the premises. At that point, Lester's daughter left the home after Marple stood between her and her father as Lester pointed the pistol at his daughter. As the daughter left the home, she continued to hear Lester order Marple, in profane terms, to leave the home. Then she heard the report of two pistol shots, after which Lester walked from the house with the pistol in his hand and said, "I killed the s.o.b."
¶ 3. Lester, in his defense, testified that Marple had physically attacked him, knocking him to the floor, and threatened to "cut his g.d. guts out." He said Marple refused his repeated demands to remove himself from the premises, and it was at that point that Lester shot Marple to protect himself from further anticipated physical assault from Marple.
¶ 4. The jury was instructed on the crimes of murder and heat of passion manslaughter. The jury was further instructed on the applicable law regarding self-defense and the right of an individual to protect his home from unauthorized trespassers. After deliberation, the jury returned a verdict of guilty of murder.

II.

Sufficiency of the Evidence
¶ 5. Lester claims that the proof is uncontradicted that, prior to firing the fatal shots into Marple's body, Lester had repeatedly ordered Marple to leave the premises. Thus, at worst, he contends, he could only have been guilty of manslaughter based on the theory that he used excessive force to repel an unwanted trespasser.
¶ 6. In assessing the merits of Lester's argument, we are, by long-established precedent, obligated to view the evidence in the light most favorable to upholding the jury's verdict. Pearson v. State, 428 So.2d 1361, 1364 (Miss.1983). Viewed in that light, the evidence discloses a situation where Marple arrived at Lester's home and was voluntarily admitted as a guest by Lester's wife. Lester's subsequent behavior, that included verbal threats to kill his family members, to kill Marple, and then to kill himself, accompanied by the brandishing of a firearm, commenced immediately upon Lester's entering the room with Marple. Marple's subsequent efforts to calm his agitated friend and even to stand between Lester and Lester's own daughter to protect her from her father's threats would not appear to place him in the class of an unauthorized trespasser despite Lester's repeated demands that he leave the property.
¶ 7. Generally, it is for the jury after having heard the evidence and received the appropriate instructions on the lawto make the determination as to the grade of homicide. Jackson v. State, 740 So.2d 832(¶ 8) (Miss.1999). The jury was instructed both as to the crime of manslaughter and murder and apparently concluded that Lester's behavior, including coming into the room armed with a deadly weapon, together with the absence of any evidence of a sudden provocation of sufficient impact to invoke considerations of an act done in the heat of passion, demonstrated that Lester acted with deliberate design in firing not one, but two, fatal shots into the body of his unarmed victim. We find that, viewing the evidence in the light most favorable to upholding the conviction, *585 there is enough proof to uphold that determination by the jury.

III.

Jury Instructions
¶ 8. Lester complains that the trial court erred in denying his requested instructions numbered D-1 and D-5. However, the record shows that defense counsel consented to the withdrawal of D-5 when it was agreed that the elements of that instruction had been adequately covered in other instructions already marked to be given to the jury. That leaves us with only the refused instruction D-1 to consider.
¶ 9. Lester's argument regarding refused instructions, in its entirety, consists of the assertion that, "[t]he lower Court failed to adequately protect or submit to the jury defendant's rights of self-defense and defense of habitation." Instruction D-1 as proposed by the defense read as follows:
Every occupant of a house is justified in taking the life of another in defense of his habitation where it is actually or apparently necessary to do so in order to repel an assault or attempted personal violence on his person from such other.
In order that a homicide may be justifiable as in defense of habitation, it is not essential that there be a peril of death or great bodily harm, as any violent attempt to assault or offer personal violence to a homeowner justifies defense of his habitation.
¶ 10. The trial court refused that instruction upon reaching the conclusion that the pertinent issues raised in the instruction had been adequately covered in other instructions, specifically Instructions D-2 and D-4. We quote the two instructions in full:

D-2
When a person is in his own home, where he has a right to be, then he has a right to exclude outsiders therefrom and to use reasonable force necessary to eject him or them therefrom.
D-4
Where a visitor is ordered by the occupant of a house to leave said house, but he fails or refuses so to do, then the occupant may deal with him as a wilful trespasser. No visitor is authorized to remain on the premises after being ordered by the occupant to leave.
¶ 11. The law regarding defense of habitation is not such that a mere trespasser, having been once warned to vacate the premises, may thereafter be killed by the premises' owner with impunity if he fails to leave the property soon enough to satisfy the desires of the owner. The law contemplates, rather, that deadly force may only be employed to repel a trespasser who demonstrates the apparent purpose of assaulting or offering violence to an occupant or committing some other crime on the premises. Bowen v. State, 164 Miss. 225, 227, 144 So. 230, 232 (1932). Insofar as the defense contemplates the prospect of physical violence against the premises owner or some other occupant, the defense invokes many of the same considerations as that of pure self-defense, the principal distinction apparently being that the threat of serious bodily injury need not be as imminent in defense of habitation as in a case of individual self-defense. Thus, if it appears reasonable for the occupant to conclude that the ultimate purpose of the trespasser is to inflict such harm, then, because of the law's recognition of the sanctity of one's own residence, deadly force may be employed to end the *586 potential danger at a stage before the actual threat becomes immediate. Id.
¶ 12. The defense is entitled to an instruction covering its theory of the case so long as there is evidence in the record that would support that theory without regard to the probative value of that evidence so long as it is more than a mere scintilla of proof. E.g., McGee v. State, 820 So.2d 700(¶ 9) (Miss.Ct.App. 2000). However, in this case, the only evidence dealing with Lester's use of force against Marple came from Lester's own testimony. In that testimony, he related that Marple had already assaulted him by knocking him to the floor with what Lester described as a football tackle, and that Marple was advancing toward Lester lying on the floor, voicing the threat that, "I'm going to cut your g.d. guts out, you s.o.b." According to Lester, it was only at that point that, as he tried to rise from the floor, he first fired a warning shot into the floor and, when that failed to halt Marple's advance, fired two more shots, both of which struck Marple and led to his death.
¶ 13. In addition to the instructions regarding the right of an individual to repel trespassers from his home, Lester was given a standard self-defense instruction. In view of Lester's testimonythe only evidence tending to show any justification for his act of shooting Marple twice with a deadly weaponwe are of the opinion that the alleged assault by Marple against Lester had, by the defendant's own testimony, advanced to a stage where the distinction between using deadly force in defense of habitation and using deadly force in self-defense no longer had any particular relevance to the jury's understanding of the law.
¶ 14. Had the jury chosen to believe Lester's version of events, it is evident that an acquittal would have been a proper verdict for a jury following the instructions given by the court. There is a presumption that the jury follows the court's instructions. Edwards v. State, 413 So.2d 1007, 1010 (Miss.1982). By returning a verdict of guilty, it seems evident that the jury chose not to believe Lester's version and, instead, decided that Lester had purposely shot Marple to death under circumstances where Marple had neither threatened nor otherwise indicated that he was bent on assaulting Lester or committing any other crime within the confines of Lester's residence, but where Marple was, instead, merely attempting to calm Lester and end Lester's threats to kill himself and others. In that circumstance, we do not think that the law relating to defense of habitation offered a less restrictive means than self-defense for Lester to justify his actions in ending Marple's life, since the jury was adequately instructed on self-defense, we do not conclude that the trial court erred in refusing requested instruction numbered D-1.
¶ 15. THE JUDGMENT OF THE CIRCUIT COURT OF TUNICA COUNTY OF CONVICTION OF MURDER AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, SAID SENTENCE TO RUN CONSECUTIVELY TO ANY AND ALL SENTENCES PREVIOUSLY IMPOSED, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO TUNICA COUNTY.
KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, IRVING, MYERS, CHANDLER AND GRIFFIS, JJ., CONCUR.