IRVING, J.,
for the Court.
¶ 1. Miguel D. McCallum was convicted by a Forrest County jury of aggravated assault and was sentenced by the circuit court to twenty years in the custody of the Mississippi Department of Corrections with fifteen years suspended and five years to serve. Aggrieved, McCallum appeals and asserts (1) that the trial court erred in denying his motion for a judgment notwithstanding the verdict or, alternatively, for a new trial, and (2) that the verdict is against the overwhelming weight of the evidence.
¶ 2. Finding no error, we affirm.
FACTS
¶ 3. In August 2005, McCallum and his girlfriend, Tammy Jenkins, brought their Cadillac to Clifton Clark, a mechanic, for him to replace its transmission.[1] At that time, Clark was operating his business on the premises of a Red Arrow Car Wash in Hattiesburg, Mississippi. Clark subsequently moved his business to another location, but McCallum and Jenkins’s vehicle remained at Red Arrow. Sometime thereafter, Clark told them that the vehicle would be ready on Monday, October 30, 2005. McCallum and Jenkins went to Red Arrow to pick up the vehicle; however, when they arrived, Clark informed them that although he had replaced the transmission, he could not get the vehicle to start because there was a problem with its security system that required a replaee *190 ment key to resolve. McCallum went to the local Cadillac dealership to get the replacement key for the vehicle, and Clark returned to his place of business.
¶ 4. After obtaining the replacement key, McCallum went to where Clark was currently operating Clark’s auto repair shop. McCallum arrived at the repair shop with a bottle of whiskey in his hand. Clark testified that this annoyed him. According to Clark, he informed McCallum that he did not want him bringing alcohol into his business and asked him to put the whiskey away. Clark then told McCallum that the key needed to be reset and that the process for resetting the key could take up to four hours. Clark suggested that McCallum and Jenkins wait until the following day to pick up the vehicle, but Jenkins informed Clark that she needed the vehicle, so Clark went back to Red Arrow to try to reset the key.
¶ 5. As Clark, McCallum, and Jenkins were walking out of the auto repair shop, Clark was approached by one of his customers who requested that he look at his vehicle that was making a noise. Clark testified that, shortly thereafter, he went to his truck because he thought that McCallum and Jenkins had already left. In the meantime, Clark received a call on his cellular telephone from George Butler, a mechanic who was working with him. Butler asked Clark if he could assist him in making a repair. Clark walked over to help him, and while he was doing so, he received another call on his cellular telephone; this time Jenkins was on the line. Jenkins asked Clark when he planned to attend to their vehicle. Clark responded that he was working as fast as he could, but if he was not moving fast enough, they could simply pay him for installing the transmission and take the vehicle to the Cadillac dealership to resolve the security problem. Jenkins told him that she would rather have him complete the work. During the discussion, Clark informed Jenkins that McCallum had brought a bottle of whiskey into his shop. Jenkins, who was in the car with McCallum, asked him if he had gone into Clark’s business “drinking whiskey.” McCallum responded that he had not. Clark testified that while he was still on the line with Jenkins, McCallum approached him and began cursing at him. Clark then stated that McCallum hit him on the head several times with the butt of a gun before firing at his feet.
¶ 6. On cross-examination, Clark stated that when McCallum first approached him he did not know that McCallum was armed. Then, McCallum swung at Clark and Clark turned his head. The gun struck Clark in the head, and the gun then fell to the ground. According to Clark, he knew that he had been hit with something other than a fist, but he did not know that he had been hit with a gun at that time. Clark testified that McCallum then picked up the gun, put a bullet in the chamber, pointed it at Clark’s head, and fired twice at his feet. McCallum and Jenkins fled the scene before the police arrived.
¶ 7. The State also offered the testimony of eyewitnesses Michael Townsend, Matthew Lomas, and Butler.[2] Townsend and Lomas worked at separate locations near Clark’s business, while Butler, a mechanic, worked at the auto shop with Clark. Townsend testified that he was at Clark’s shop when Clark became engaged in what Townsend described as a “heated conversation.” Townsend testified that as he was about to leave, he saw an individual run up to Clark. He also testified that he witnessed this individual point a gun at *191 Clark’s face and then strike Clark on the head.[3] Further, Townsend testified that the indiyidual’s back was to him, so he could not see the exchange that followed; however, he stated that he heard a gunshot and saw the individual point a gun at Clark’s face again. According to Townsend, Clark had his hands covering his head as the individual struck him four additional times. Townsend then went to his business and asked one of his colleagues to call 911 and to report that shots had been fired. Townsend returned to the scene of the shooting with a chair for Clark to sit in. Clark complained that his feet felt as if they were on fire.
¶ 8. Butler stated that when McCallum entered the shop with the bottle of whiskey, Clark asked him to leave. Like Townsend, Butler stated that when Clark went outside McCallum swung at Clark, and Clark turned his head. According to Butler, McCallum then brought a pistol from behind his back and hit Clark in the back of his head with it. The pistol then fell from McCallum’s hand; McCallum picked it up, pulled the trigger, and pointed the gun at Clark’s face.[4] Butler recalled that McCallum then hit Clark in the head again with the gun and fired two rounds at Clark’s feet. Butler also recalled McCallum hitting Clark in the head several additional times after he had shot him. Butler then left and called 911 from a next door business.
¶ 9. Officer Wendy Thomas arrived and observed Clark sitting in a chair, holding his head as it bled. Clark informed Thomas that McCallum was the shooter, that he had been shot twice in the feet, and that he had been hit in the head with an object that he could not identify. Thomas recovered one spent casing and one round.
¶ 10. Dr. Patrick Charbonneau, the doctor who treated Clark when he arrived at the emergency room at Forrest General Hospital, testified as to the extent of Clark’s injuries. Dr. Charbonneau testified that Clark suffered injuries consistent with gunshot wounds and that X-rays revealed that Clark had fragments of metal in his feet. Dr. Charbonneau also testified that the fragments were not removed and that Clark was treated and released. Dr. Charbonneau further stated that Clark had a laceration on his head.
¶ 11. Jenkins testified on behalf of the defense and recalled a slightly different version of events. According to Jenkins, when she and McCallum returned to the shop with the replacement key, she called Clark on his cellular telephone to make sure that he planned to return to Red Arrow. Jenkins stated that Clark began cursing and “let his frustrations out on [her].” Jenkins also stated that McCallum overheard Clark’s remarks and told her that he was going to try and smooth things over with Clark. Jenkins then stated that she stood by the car and waited on McCal-lum to return. Jenkins recalled that Clark came out of the shop in a rage and threatened to hurt McCallum. Jenkins testified that McCallum told Clark to stop walking toward him and that Clark refused. Jenkins stated that at that point, McCallum fired one shot at the ground which caused the asphalt to crack. Further, Jenkins testified that after the shot was fired, Clark and McCallum began tussling with one another and that the gun fell to the ground. Jenkins also stated that McCal-lum struck Clark on his head; however, unlike Butler, Jenkins stated that he did so with his hand and not with the gun.
*192 ¶ 12. Jenkins stated that Clark did not show any sign that he had been injured, so she and McCallum left the scene. Jenkins also stated that she was surprised to learn that Clark had been injured. On cross-examination, Jenkins stated that she, Clark, and McCallum were the only people present when the shooting occurred.
¶ 13. McCallum testified in his own defense and recalled that things between him and Clark went downhill after he entered Clark’s shop with the bottle of whiskey. McCallum stated that he had brought the whiskey as a gift for Clark because Clark had worked hard to repair the vehicle. After Clark instructed him to leave, McCallum stated that he complied and went to the vehicle where Jenkins was waiting and told her that Clark did not want him to enter his shop with the bottle of whiskey. McCallum stated that Jenkins asked Clark when he planned on completing the work on their vehicle, and he told her that he was about to go over to Red Arrow right then.
¶ 14. Jenkins and McCallum went back to their vehicle, and after waiting for about five minutes for Clark to come out of the shop, Jenkins called Clark. McCallum could hear Clark talking to Jenkins and surmised that Clark was upset because he heard him cursing at Jenkins. McCallum stated that he informed Jenkins that he was going to go back inside and talk to Clark. McCallum walked toward the shop and noticed Clark standing in the doorway. McCallum testified that when Clark saw him, Clark hung up his cellular telephone and approached McCallum “in an aggressive manner.” McCallum stated that as Clark approached him, “[Clark] was reaching under his shirt like he had something.” McCallum also stated that Clark was “patting on his hip and going under his shirt and the back of his clothes like he had something.” At this point, McCallum stated that he realized that he had his gun on his hip, so he pulled it because he was afraid that Clark had a weapon.[5] McCal-lum testified that he cocked the gun and ejected a live round to show Clark that he was serious. McCallum stated that Clark approached him and that he shot at the ground to warn Clark to back up. McCal-lum said that he saw the concrete separate; Clark threw his hands up, turned his head, and grabbed McCallum’s arm. McCallum stated that this made him nervous because he thought that Clark was going to take his gun away from him. McCallum admitted pointing the gun at Clark, and he stated that he hit Clark twice with his fist, but he denied hitting Clark with the gun. Further, McCallum echoed Jenkins’s testimony that no one was present when the shooting occurred and that Townsend, Lomas, and Butler came out of the shop after Jenkins started screaming. McCallum was adamant that he did not intend to shoot Clark, and like Jenkins, he stated that he did not realize that Clark had been injured.
¶ 15. McCallum gave a written statement in December 2005. In his statement, he stated that the butt of the gun “made contact” with Clark a few times while they were struggling. Initially, McCallum’s trial testimony did not include any mention of him hitting Clark with the butt of a gun. However, after his attorney brought to his attention that he had not mentioned in his trial testimony that Clark had been hit with the butt of the gun, McCallum then stated that Clark was inadvertently hit when McCallum was swinging wildly to keep Clark from taking the gun.
*193 ¶ 16. On cross-examination, the State pointed out that McCallum did not mention in his wiitten statement that Clark had grabbed his arm. The State also noted that McCallum failed to mention that he had bought the whiskey as a gift for Clark.
ANALYSIS AND DISCUSSION OF THE ISSUES

1. Juror Misconduct

¶ 17. McCallum contends that the trial court erred in denying his motion for a judgment notwithstanding the verdict or, alternatively, for a new trial wherein he attached identical affidavits of six of his family members who claimed to have witnessed juror Ruth Brown sleeping during McCallum’s two-day trial. We note at the outset that McCallum did not bring this issue to the trial judge’s attention during his trial; instead, he raised this issue for the first time in his motion.
II18. McCallum argues that the trial court erred in dismissing his motion and relies on Church v. Massey, 697 So.2d 407 (Miss.1997) to support his argument that the trial court should have granted his motion. In Church, one of the issues before the court was whether the trial court erred in refusing to excuse a juror who had been observed sleeping during most of the defendant’s trial. Id. at 413. The Mississippi Supreme Court stated that “[t]he matter of sleeping jurors causes us great concern. Due to the great responsibilities placed by our system of jurisprudence on the shoulders of our jurors, it is imperative that their duties be taken seriously.” Id. at 414.
¶ 19. We find McCallum’s reliance on Church misplaced, as we note that Church’s attorney raised the issue of the sleeping juror during the trial by asking the court to excuse that juror and to replace her with an alternate juror before the jury began to deliberate. Id. at 413-14. Further, we fail to see how no one other than McCallum’s family members observed Brown sleeping. McCallum argues that his attorney did not notice Brown sleeping because he was trying the case alone.
¶ 20. Although it would have been helpful to this Court if the trial judge had specifically addressed McCallum’s allegation against Brown in his order denying McCallum’s request for a judgment notwithstanding the verdict, we cannot conclude that the judge erred in refusing to grant McCallum’s motion. The Mississippi Supreme Court has stated that “even if we wanted to be fact[-]finders, our capacity for such is limited in that we have only a cold, printed record to review.” Gavin v. State, 473 So.2d 952, 955 (Miss.1985). The trial judge was present during the trial and able to observe the jury; thus, we assume that the trial judge did not notice Brown sleeping during McCallum’s trial, as he did not mention it in his order. There is no merit to this issue.

2. Sufficiency of the Evidence

¶ 21. “[Tjhe denial of a motion for judgment notwithstanding the verdict implicates the legal sufficiency of the evidence.” Brown v. State, 796 So.2d 223, 225(¶5) (Miss.2001) (citing May v. State, 460 So.2d 778, 781 (Miss.1984)). This Court employs a limited standard of review in reviewing a trial court’s determination that the evidence was sufficient to sustain a conviction. Id. at (¶ 6). In Townsend v. State, 939 So.2d 796, 801(¶24) (Miss.2006) (quoting Bush v. State, 895 So.2d 836, 843(¶ 16) (Miss.2005)), the Mississippi Supreme Court stated that:
in considering whether the evidence is sufficient to sustain a conviction in the face of a motion for ... judgment notwithstanding the verdict, the critical in *194 quiry is whether the evidence shows “beyond a reasonable doubt that [the] accused committed the act charged, and that he did so under such circumstances that every element of the offense existed; and where the evidence fails to meet this test it is insufficient to support a conviction.”
The Court further held that:
if a review of the evidence reveals that it is of such quality and weight that, “having in mind the beyond a reasonable doubt burden of proof standard, reasonable fair-minded [jurors] in the exercise of impartial judgment might reach different conclusions on every element of the offense,” the evidence will be deemed to have been sufficient.
Id. at 801-02(¶ 24) (internal citations omitted).
¶22. Mississippi Code Annotated section 97-3-7(2) (Supp.2008) provides in pertinent part:
A person is guilty of aggravated assault if he (a) attempts to cause serious bodily injury to another, or causes such injury purposely, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life; or (b) attempts to cause or purposely or knowingly causes bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm[.]
Considering the evidence in the light most favorable to the State, we conclude that there was sufficient evidence to sustain McCallum’s conviction for aggravated assault. McCallum admitted firing a firearm at Clark’s feet, and there is no doubt that a firearm qualifies as a deadly weapon. We also note that Clark sought emergency medical care and that bullet fragments remain in his feet. Moreover, Clark positively identified McCallum as the person who shot him, and Butler testified that he witnessed McCallum shoot Clark. Further, the Mississippi Supreme Court in addressing whether aggravated assault requires intent stated that “[t]here is apparently no specific intent requirement.” McGowan v. State, 541 So.2d 1027, 1029 (Miss.1989) (citing Davis v. State, 476 So.2d 608, 610 (Miss.1985)). Thus, we cannot accept McCallum’s assertion that he did not intend to shoot Clark. We conclude that sufficient evidence exists to sustain McCallum’s conviction for aggravated assault, despite his assertions to the contrary. This issue lacks merit.

3. Weight of the Evidence

¶ 23. McCallum also argues that the trial judge erred in denying his motion for a new trial because he claims that his conviction was against the overwhelming weight of the evidence. “Motions for [a] new trial challenge the weight of the evidence supporting the verdict.” Bridges v. State, 807 So.2d 1228, 1231(1114) (Miss.2002). In Chambliss v. State, 919 So.2d 30, 33-34(¶ 10) (Miss.2005) (quoting Bush, 895 So.2d at 844(¶ 18)), the Mississippi Supreme Court held that:
When reviewing a denial of a motion for a new trial based on an objection to the weight of the evidence, we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice. Hernng v. State, 691 So.2d 948, 957 (Miss.1997). We have stated that on a motion for new trial, the court sits as a thirteenth juror. The motion, however, is addressed to the discretion of the court, which should be exercised with caution, and the power to grant a new trial should be invoked only in exceptional cases in which the evidence preponderates heavily against the verdict. Amiker v. Drugs for Less, Inc., 796 So.2d 942, 947 (Miss.2000). *195 However, the evidence should be weighed in the light most favorable to the verdict. Herring, 691 So.2d at 957. A reversal on the grounds that the verdict was against the overwhelming weight of the evidence, “unlike a reversal based on insufficient evidence, does not mean that acquittal was the only proper verdict.” McQueen v. State, 423 So.2d 800, 803 (Miss.1982). Rather, as the “thirteenth juror,” the court simply disagrees with the jury’s resolution of the conflicting testimony. Id. This difference of opinion does not signify acquittal any more than a disagreement among the jurors themselves. Id. Instead, the proper remedy is to grant a new trial.
¶ 24. We conclude that the jury’s verdict was not against the overwhelming weight of the evidence. Additionally, as previously stated, Clark testified as to what happened on the day of the shooting, and Butler testified that he witnessed MeCallum shoot Clark. McCallum’s testimony is not sufficient to support a finding that the jury’s verdict was against the overwhelming weight of the evidence. Given the weight of the evidence supporting McCallum’s conviction, allowing the jury’s verdict to stand will not “sanction an unconscionable injustice.” There is no merit to this issue.
¶ 25. THE JUDGMENT OF THE FORREST COUNTY CIRCUIT COURT OF CONVICTION OF AGGRAVATED ASSAULT AND SENTENCE OF TWENTY YEARS WITH FIFTEEN YEARS SUSPENDED AND FIVE YEARS TO SERVE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO FORREST COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., CHANDLER, GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.

. It is not clear whether McCallum or Jenkins owns the vehicle that Clark was repairing.

. Lomas testified that he witnessed the shooting but that he could not identify the shooter. He also testified that Clark did not do anything to provoke the attack.

. Townsend was not clear as to whether McCallum struck Clark with his hand or with a gun.

. Butler surmised that McCallum had not cocked the gun prior to pulling the trigger.

. McCallum later admitted that he never saw Clark with a weapon. McCallum also stated that at the time of the shooting he regularly carried a gun because he had been shot years prior to his encounter with Clark.