ISHEE, J„
 

 for the Court:
 

 ¶ 1. Cody Banton was convicted of murder. The Circuit Court of Panola County sentenced him to life in the custody of the Mississippi Department of Corrections (MDOC). Banton now appeals and raises the following allegations of error:
 

 I. Whether the circuit court erred in denying his motion for a new trial;
 

 II. Whether the circuit court erred in denying his motion for a judgment notwithstanding the verdict; and
 

 III. Whether the imposition of imprisonment for life is cruel and unusual punishment for a seventeen-year-old youth.
 

 Finding no error, we affirm.
 

 FACTS
 

 ¶ 2. On the night of April 25, 2008, Ban-ton, his father, Harley Banton (Harley), Shane Keel, and Tina Kramer were all gathered at Harley’s house. Harley went to bed at approximately 9:30 p.m., but he was later awaken by an argument between Banton and Keel. The argument was quickly resolved. Harley then went outside to talk to Kramer. Keel came outside shortly thereafter.
 

 ¶ 3. Harley mistakenly thought that Keel and Kramer had been arguing, so he asked Keel to leave. Keel refused to leave and remained in Harley’s yard drinking a beer and trying to talk to Kramer. Harley asked Keel to leave several more times, but Keel continued to refuse. Upset that Keel would not leave, Harley picked up a shovel and started hitting Keel with it. Harley testified at trial that Keel never hit him, but he thought that Keel would “beat the crap out of me.” While Harley was hitting Keel with the shovel, Banton came outside with a gun and shot and killed Keel.
 

 ¶ 4. After Banton shot Keel, Harley called 911 and informed the dispatcher that there had been an accidental shooting at his house. When the police officers arrived, Harley stated that he, Banton, Keel, and Kramer had all been sitting around a campfire shooting into the woods. Then, at some point, Keel got up; Harley heard a gunshot; and he saw Keel lying on the ground. Banton gave a different account of what had happened. He told the police officers that he was inside playing video games when he heard four or five gunshots, went outside, and found Keel dead on the ground.
 

 ¶ 5. At trial, Harley testified that he did not know why Banton shot Keel unless Banton was trying to protect him. However, both Kramer and Banton testified that while Harley was hitting Keel with the shovel, Harley yelled for Banton to “go get the gun.” Banton admitted at trial that he did go get a gun and aimed it at Keel, but he stated that his only intention was to scare Keel. Banton also testified that he fired the gun only after he saw Keel’s hands go up and he thought Keel
 
 *798
 
 had a knife. No knife was recovered from the scene.
 

 ¶ 6. Banton was found guilty of murder. His motion for a new trial or, in the alternative, for a judgment notwithstanding the verdict was denied by the circuit court. Thereafter, he timely filed this appeal.
 

 DISCUSSION
 

 I. Whether the circuit court erred in denying Banton’s motion for a new trial.
 

 ¶7. Banton first takes issue with the circuit court’s denial of his motion for a new trial. Banton argues that the verdict is against the weight of the evidence presented at trial. He alleges that he feared for his father’s life and was only trying to protect him.
 

 ¶ 8. “When reviewing a denial of a motion for a new trial based on an objection to the weight of the evidence, we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.”
 
 Bush v. State,
 
 895 So.2d 836, 844 (¶ 18) (Miss.2005). Our review of the record as a whole provides no error by the circuit court in denying Banton’s motion for a new trial. Kramer’s statements to the police officers following the incident and her testimony at trial of what happened that night are consistent with the physical evidence at the scene. However, both Banton and Harley gave contradictory versions of the events to the police officers. Initially, they stated that the shooting was accidental, but later they changed their statements to say that the shooting was in self-defense.
 

 ¶ 9. After weighing the evidence and assessing the witnesses’ credibility, the jury returned a guilty verdict. We find that the jury’s verdict is not against the overwhelming weight of the evidence and does not represent an unconscionable injustice. Therefore, this issue is without merit.
 

 II. Whether the circuit court erred in denying Banton’s motion for a judgment notwithstanding the verdict.
 

 ¶ 10. Next, Banton takes issue with the circuit court’s denial of his motion for a judgment notwithstanding the verdict. Banton claims that the State did not present legally sufficient evidence to support the jury’s guilty verdict. Banton states that in the present case, Harley did not have to retreat when confronted by Keel, and that Banton had the right to shoot and kill Keel in order to protect his father. Banton argues that his actions were justifiable under the “Castle Doctrine.” The “Castle Doctrine” states in part:
 

 A person who uses defensive force shall be presumed to have reasonably feared imminent death or great bodily harm, or the commission of a felony upon him or another or upon his dwelling ... and the person who used defensive force knew or had reason to believe that the forcible entry or unlawful and forcible act was occurring or had occurred.
 

 Miss.Code Ann. § 97-3-15(3) (Rev.2006).
 

 ¶ 11. The evidence showed that Keel was neither in the process of unlawfully and forcibly entering nor had unlawfully and forcibly entered the Bantons’ property when Banton shot Keel. Moreover, there was no evidence that Keel was going to commit an assault, offer violence to anyone on the property, or commit some other crime on the property. The evidence only established that Keel was on the Bantons’ property, unarmed, when Banton shot him. Therefore, we find that Banton’s killing of
 
 *799
 
 Keel cannot be justified under the “Castle Doctrine.”
 

 ¶ 12. “A review of the sufficiency of the evidence does not require this Court to ‘ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt. Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.’”
 
 Johnson v. State,
 
 997 So.2d 256, 259 (¶ 9) (Miss.Ct.App.2008).
 

 ¶ 13. According to Mississippi Code Annotated section 97-3-19(l)(a), murder is defined as “[t]he killing of a human being without the authority of law by any means or in any manner shall be murder ... [w]hen done with deliberate design to effect the death of the person killed, or of any human being[.]” When considering all the evidence presented in the light most favorable to the State, we find that the evidence was legally sufficient to establish the elements of murder. There was also insufficient evidence on the basis of self-defense presented by Banton to overcome the State’s case. This issue is also without merit.
 

 III. Whether the imposition of imprisonment for life is cruel and unusual punishment for a seventeen-year-old youth.
 

 ¶ 14. Lastly, Banton asserts that the circuit court erred in sentencing him to life imprisonment because he was only seventeen years old at the time of sentencing. Banton argues that his sentence constitutes cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution and Article 3, Section 28 of the Mississippi Constitution of 1890. Banton states that these constitutional provisions require that he be treated differently than an adult because a life sentence is involved.
 

 ¶ 15. A conviction of murder carries a sentence of life imprisonment. Miss.Code Ann. § 97-3-21 (Rev.2006). Banton fails to provide relevant authority to support his contention. Arguments advanced on appeal must “contain the contentions of the appellant with respect to the issues presented, and the reasons for those contentions, with citations to the authorities, statutes, and parts of the record relied on.’ ” M.R.A.P. 28(a)(6). “Failure to comply with Mississippi Rule of Appellate Procedure 28(a)(6) renders an argument procedurally barred.”
 
 Rogers v. State,
 
 994 So.2d 792, 800 (¶31) (Miss.Ct.App.2008). This issue is procedurally barred. Assuming, for the sake of discussion, that Banton was not procedurally barred, we would find no merit to this issue. Finding no error by the circuit court, we affirm.
 

 ¶ 16. THE JUDGMENT OF THE PA-NOLA COUNTY CIRCUIT COURT OF CONVICTION OF MURDER AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO PANOLA COUNTY.
 

 KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, ROBERTS AND MAXWELL, JJ., CONCUR. BARNES, J., CONCURS IN PART AND IN THE RESULT. CARLTON, J., NOT PARTICIPATING.