CARLTON, J.,
for the Court:
¶ 1. After being indicted for murder,[1] a jury found Denorris Howell guilty of the manslaughter of LaKeith Jones.[2] Howell *214 now appeals his conviction and raises the following issues: (1) whether there was sufficient evidence to support his manslaughter conviction; (2) whether the verdict was against the overwhelming weight of the evidence; and (3) whether the circuit court erred by denying his request to admit into evidence photographs of his family.
¶ 2. Upon review, we find the evidence in the record legally sufficient to support Howell’s conviction and that his guilty verdict is not against the overwhelming weight of the evidence.[3] In addition, we find no abuse of discretion by the circuit court’s exclusion of Howell’s family photographs.[4] We therefore affirm the circuit court’s ruling and Howell’s conviction.
FACTS
¶ 3. On July 27, 2010, Howell and his friend, Cal Curry, were at Howell’s residence when a car pulled into the driveway. Inside the vehicle were Jones; his younger brother, Jeremy Jones; his nephew, Dean Bridgeforth; and a friend, Terrance Co-wan. Jones exited the car and walked toward the garage to find Howell. As the State’s evidence showed, Jones received a cell-phone call from Howell earlier that morning, which lasted a little over one minute. Following the phone call, Jones began asking family members for a ride to the area where Howell lived. As testimony showed, Howell had recently sold a car to Jones, and Jones still owed Howell money for the car. According to testimony from the State’s witnesses, Jones planned to pay the remaining balance he owed Howell for the car and to obtain a set of car keys from Howell. Although trial testimony varied as to what occurred in Howell’s garage, the record reflects that, at some point after Jones’s arrival, the conversation between Jones and Howell became heated and confrontational.
¶ 4. According to Howell’s brief and Curry’s trial testimony, Jones began cursing and yelling at Howell, could not remain still, and was acting paranoid and out of control. Howell asserts in his brief that Jones attempted to grab a baseball bat lying inside the garage, and in response, Howell drew his gun and shot Jones five times. Although Curry was standing inside the garage at the time of the shooting, he testified that he failed to witness the actual shooting because he was focused on the car containing Jeremy, Bridgeforth, and Cowan.
¶ 5. According to the testimony provided by Jeremy, Cowan, and Bridgeforth, Jones stood in Howell’s garage several minutes before Howell exited his house and joined Jones in the garage. Jeremy and Bridgeforth testified that Jones spoke to Curry as he waited for Howell. Jeremy, Cowan, and Bridgeforth all testified that Jones possessed no weapon when he entered the garage and that they did not see Jones consume any drugs or alcohol that morning prior to driving to Howell’s home. All three men also testified that Jones seemed happy and in a good mood on the car ride to Howell’s home.
¶ 6. Jeremy and Cowan further testified that, when Howell finally entered the garage from his house, he held a gun in his hand. Bridgeforth, who initially had his back to the garage, testified that he also saw a gun in Howell’s hand when he looked toward the garage. According to Jeremy’s and Cowan’s testimony, Howell *215 entered the garage and stood between Jones and the exit, essentially trapping Jones inside the garage. Both Jeremy and Cowan testified that Howell and Jones began to argue, Howell pushed Jones, and then Howell shot Jones. As they watched events unfold inside the garage, the three men inside the car began to back out of Howell’s driveway toward the street. They testified that, when they witnessed Howell shoot Jones, they fled the scene out of fear for their own lives.
¶ 7. At trial, Jeremy and Cowan both testified that they saw Howell’s wife, Angela, come outside. Following the shooting, Angela made a 911 call at 1:07 p.m., stating that her husband had shot a man. The telephone call got disconnected, but Angela called back at 1:12 p.m. Howell also made a 911 call, which occurred a few minutes later at 1:15 p.m. During the emergency call, Howell told the 911 dispatcher that he shot Jones in self-defense because he thought Jones was about to pull out a pistol. Howell also told the dispatcher that Jones had previously robbed him.
¶ 8. James Warren, an investigator for the Marshall County Sheriffs Department, was the first law enforcement officer to respond to the emergency calls. Investigator Warren testified that he arrived at Howell’s residence at 1:22 p.m. He further testified that Howell, without any prompting, stated that he had not wanted to shoot Jones but that Jones was robbing him and had robbed him four times in the past. Law enforcement found no weapon in Jones’s possession when they conducted their investigation. The medical examiner who performed Jones’s autopsy testified that Jones sustained a total of five gunshots and died as a result of his injuries. The medical examiner further testified that Jones had both cocaine and marijuana in his system when he died.
¶ 9. After hearing the evidence and being instructed by the circuit court judge, the jury deliberated and found Howell not guilty of Jones’s murder.[5] However, the jury found Howell guilty of manslaughter pursuant to section 9T-3-35.[6] The circuit court judge sentenced Howell to twenty years in the custody of the Mississippi Department of Corrections, with three years suspended, seventeen years to serve, and three years of post-release supervision. Following his manslaughter conviction, Howell filed a motion for a judgment notwithstanding the verdict (JNOV) or, in the alternative, a new trial, which the circuit court judge denied. Aggrieved by his conviction and the circuit court’s ruling, Howell appeals to this Court.
DISCUSSION
I. Whether there was sufficient evidence to support Howell’s manslaughter conviction.
¶ 10. Howell argues that the evidence presented at trial was insufficient to support his conviction as a matter of law because the jury’s verdict was against the overwhelming weight of the evidence. For the sake of clarity, we have separated Howell’s argument into two issues— whether there was sufficient evidence to support his conviction and whether the jury’s verdict was against the overwhelm *216 ing weight of the evidence. We address each argument separately.
¶ 11. As this Court has acknowledged in previous caselaw, when reviewing the denial of a motion for a JNOV, we apply the following standard of review: [W]e look to the sufficiency of the evidence, and it is viewed and tested in a light most favorable to the State. When reviewing a denial of a JNOV[,] the prosecution is given the benefit of all favorable inferences that may be reasonably drawn from the evidence, and all credible evidence consistent with the defendant’s guilt must be accepted as true. This Court may only reverse a denial of [a] JNOV when[,] with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty.
Price v. State, 892 So.2d 294, 297 (¶ 12) (Miss.Ct.App.2004) (internal citations and quotation marks omitted).
¶ 12. After hearing the evidence presented at trial, the jury found Howell guilty of manslaughter. As our caselaw recognizes, Howell was not required to prove that he acted in self-defense. See Heidel v. State, 587 So.2d 835, 843 (Miss. 1991). Instead, the State bore the burden of proving each element of Howell’s charged offense, and if the evidence resulted in a reasonable doubt regarding Howell’s guilt, then the jury was instructed to acquit Howell. Id. To meet its burden of proving each element of Howell’s charged offense, the State was required to prove beyond a reasonable doubt that Howell failed to act in necessary self-defense when he shot Jones. See Hammond v. State,
119 So.3d 1074, 1078 (¶ 15) (Miss.Ct.App. 2013).
¶ 13. As set forth in Mississippi Code Annotated section 97-3-15(l)(e)-(f) (Rev. 2006), the killing of a human being is justifiable homicide under the following circumstances:
When committed by any person in resisting any attempt unlawfully to kill such person or to commit any felony upon him, or upon or in any dwelling, ... or in the immediate premises thereof in which such person shall be;
When committed in the lawful defense of one’s own person or any other human being, where there shall be reasonable ground to apprehend a design to commit a felony or to do some great personal injury, and there shall be imminent danger of such design being accomplished^]
¶ 14. In addition to asserting a theory of self-defense and justifiable homicide, Howell argues that the castle doctrine exonerates his conduct.[7] The castle doctrine, codified as Mississippi Code Annotated section 97 — 3—15(3)—(4) (Rev.2006), states in pertinent part:
A person who uses defensive force shall be presumed to have reasonably feared imminent death or great bodily harm, or the commission of a felony upon him or another or upon his dwelling, ... if the person against whom the defensive force was used, was in the process of unlawfully and forcibly entering, or had unlawfully and forcibly entered, a dwelling, ... and the person who used defensive force knew or had reason to believe that the forcible entry or unlawful and forcible act was occurring or had occurred. This presumption shall not apply if the *217 person against whom defensive force was used has a right to be in or is a lawful resident or owner of the dwelling, ... or if the person who uses defensive force is engaged in unlawful activity ...; A person who is not the initial aggressor and is not engaged in unlawful activity shall have no duty to retreat before using deadly force under subsection (l)(e) or (f) of this section if the person is in a place where the person has a right to be, and no finder of fact shall be permitted to consider the person’s failure to retreat as evidence that the person’s use of force was unnecessary, excessive!,] or unreasonable.
In other words, as summarized by our recent caselaw, the castle doctrine “creates a presumption of fear and abridges a duty to retreat in certain prescribed circumstances.” Neioell v. State, 49 So.3d 66, 74 (¶ 22) (Miss.2010).
¶ 15. In addressing Howell’s argument that the castle doctrine provides him with a defense for shooting Jones, we first look to our ruling in Westbrook v. State, 29 So.3d 828 (Miss.Ct.App.2009). The defendant in Westbrook worked as a bouncer at a bar, and after escorting a patron outside, the defendant later learned that the patron was still on the premises. Id. at 831 (¶¶ 2-4). The defendant grabbed a baseball bat, went outside and pulled the patron from his car, and then proceeded to hit the patron in the head three times with the bat. Id.
¶ 16. On appeal, the defendant in West-brook argued that he had a right to defend his employer’s property and that his actions were justifiable under the castle doctrine. Id. at 833 (¶ 13). However, this Court found no evidence that the victim was “in the process of unlawfully and forcibly entering, or had unlawfully and forcibly” entered the bar when the defendant attacked him. Id. at (¶ 15). In addition, we found no evidence showing “that [the victim] was going [to] commit an assault, offer violence to an occupant of [the bar], or commit some other crime on the premises while he was in the parking lot....” Id.
¶ 17. In finding that the defendant’s claims in Westbrook lacked merit, this Court emphasized language from Lester v. State, 862 So.2d 582 (Miss.Ct.App.2004), which predated the codification of the castle doctrine. The Westbrook court quoted the following language from Lester:
The law regarding defense of habitation is not such that a mere trespasser, having been once warned to vacate the premises, may thereafter be killed by the premises’ owner with impunity if he fails to leave the property soon enough to satisfy the desires of the owner. The law contemplates, rather, that deadly force may only be employed to repel a trespasser who demonstrates the apparent purpose of assaulting or offering violence to an occupant or committing some other crime on the premises.
Westbrook, 29 So.3d at 833 (¶ 14) (quoting Lester, 862 So.2d at 585 (¶ 11)).
¶ 18. Similarly to the language quoted from Lester, the castle doctrine, as now codified, requires an unlawful and forcible entry or trespass before the presumption arises that allows the use of deadly defensive force. See Miss.Code Ann. § 97-3-15(3). Turning to the present case, we find that, due to a lack of sufficient evidentiary basis, the circuit court properly determined the castle doctrine to be inapplicable. As a review of the record reflects, the evidence fails to show that Jones unlawfully and forcibly entered Howell’s home or that Jones attempted to assault or commit violence upon Howell.
*218 ¶ 19. Instead, the record reflects that Howell had previously sold a car to Jones and that, at Howell’s invitation, Jones went to Howell’s home to pay the remainder of the money he owed. The record further reflects that, when Jones arrived at Howell’s residence, Jones stood in the open garage, waiting for Howell and speaking with Curry. Jeremy, Cowan, and Bridge-forth all testified that Jones possessed no weapon the morning of his death. Jeremy and Cowan both stated, however, that Howell had a gun in his hand from the moment he joined Jones and Curry in the garage.
¶ 20. Jeremy and Cowan further testified that Howell, not Jones, constituted the aggressor in the fight. Both men testified at trial that Howell stood at the outer edge of the garage with the gun in his hand, blocking the unarmed Jones inside the garage. They also testified that Howell yelled at Jones, pushed him, and then shot him. As the autopsy later revealed, Howell shot the unarmed Jones five times. Based upon our review of the record and applicable caselaw, this Court finds no error in the circuit court’s determination that the castle doctrine was inapplicable to Jones’s shooting.
¶ 21. As our precedent reflects, the determination of whether Howell shot Jones in the heat of passion was properly submitted to the jury since the State presented evidence to support the jury’s consideration of the lesser-included offense of manslaughter.[8] As the record reflects, after considering the testimony and evidence presented, the jury found Howell not guilty of murder but guilty of manslaughter. As previously acknowledged, “all credible evidence consistent with the defendant’s guilt must be accepted as true.” Price, 892 So.2d at 297 (¶ 12) (citation omitted). The evidence regarding Howell’s aggressive behavior toward Jones provided a sufficient evidentiary basis for the jury to conclude that Howell acted in the heat of passion.[9] In addition, the record fails to reflect that Jones was trespassing or committing any assault or other crime at the time of the shooting. See West-brook, 29 So.3d at 833 (¶ 15).
¶ 22. In finding sufficient evidence to support Howell’s manslaughter conviction, we acknowledge that the circuit court gave jury instructions that encompassed the law on self-defense, defense of others, and the castle doctrine. We also acknowledge that the circuit court gave jury instructions that required the State to prove as an element of murder and manslaughter that Howell failed to act in self-defense, defense of others, or defense of his home. Despite the lack of evidence in the record that Jones committed any unlawful and forcible entry into Howell’s residence, the circuit court judge gave jury instructions that provided the law applicable to justifiable homicide and the castle doctrine.[10] *219 After receiving instructions on the applicable law, the jury deliberated and found Howell guilty of manslaughter beyond a reasonable doubt. In reaching this determination, the jury rejected Howell’s defense theories, including the castle doctrine.
¶ 23. Viewing the evidence in the light most favorable to the State, and giving the State the benefit of all favorable inferences that may be reasonably drawn from the evidence, we find that the record reflects that sufficient evidence was presented for a competent jury to find beyond a reasonable doubt that Howell was guilty of manslaughter and failed to act in reasonable self-defense, defense of others, or defense of his home. See Pnce, 892 So.2d at 297 (¶ 12). Therefore, we find no error in the circuit court judge’s denial of Howell’s motion for a JNOV. Accordingly, Howell’s argument that the evidence was legally insufficient to support his conviction lacks merit.
II. Whether the verdict was against the overwhelming weight of the evidence.
¶ 24. Howell also contends that the jury’s verdict finding him guilty of manslaughter was against the overwhelming weight of the evidence. When reviewing the denial of a motion for a new trial and a defendant’s argument that the verdict was against the overwhelming weight of the evidence, this Court weighs the evidence in the record in the light most favorable to the verdict. McCallum v. State, 996 So.2d 189, 194-95 (¶ 23) (Miss. Ct.App.2008). We accept as true all evidence in favor of the State, and we reverse only where the circuit court abused its discretion. Price, 892 So.2d at 297 (¶ 11). “[W]e will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction _ an unconscionable injustice.” McCallum, 996 So.2d at 194 (¶ 23) (citation omitted).
¶25. When considering a defendant’s claim that he acted in justifiable self-defense, the supreme court has stated that the issue “presents a question of the weight and credibility of the evidence, rather than sufficiency, and is to be determined by [the] jury.” Jones v. State, 39 So.3d 860, 865 (¶ 28) (Miss.2010) (citation omitted). Furthermore, “any factual disputes are properly resolved by the jury and do not mandate a new trial.” Id. (citation omitted)
¶ 26. As previously addressed, after being instructed on the law, including Howell’s theories of the case, and after considering all the testimony and evidence presented at trial, the jury resolved the factual disputes in favor of the State and found Howell guilty of manslaughter. Although Howell claims that he acted in self-defense, defense of others, and defense of his home, the State presented contradictory evidence to show that Howell invited *220 Jones to his home; that Jones possessed no weapon upon or after his arrival; and that Howell held a gun in his hand from the moment he stepped into the garage with the unarmed Jones. The State also presented evidence showing that Howell, not Jones, acted as the aggressor in the altercation and that Howell blocked Jones’s exit from the garage.
¶ 27. Weighing the evidence presented at trial in the light most favorable to the verdict, and accepting as true all evidence in favor of the State, we cannot find that the jury’s verdict was so against the weight of the evidence that it constituted an unconscionable injustice. See McCal-lum, 996 So.2d at 194 (¶ 23). We therefore find no abuse of discretion in the circuit court’s decision to deny Howell’s motion for a new trial. See Pnce, 892 So.2d at 297 (¶ 11). Howell’s assertion that the verdict was against the overwhelming weight of the evidence lacks merit.
III. Whether the circuit court erred by denying Howell’s request to admit into evidence photographs of his family.
¶ 28. In his final assignment of error, Howell contends that the circuit court judge erred by excluding photographs of his wife and children. Mississippi caselaw is well settled on the issue of a circuit court’s decision to admit or exclude photographs. Davis v. State, 660 So.2d 1228, 1259 (Miss.1995). Our precedent provides the following:
[Ajdmission of photographs into evidence rests within the sound discretion of the trial court.
Additionally, the trial court, as well as the appellate court on review, must look at Mississippi Rule of Evidence 403[,] which states: “Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.” [These are] the proper criteria for the trial court to consider in making its decision whether to admit photographs or not.
Id. (internal citations omitted).
¶ 29. At trial, Howell attempted to admit into evidence several photographs of his family. However, the State objected to the admission of the photographs, arguing that Howell was entitled to assert his theories of the case without demonstrating the appearance of those within his home at the time of the shooting. The State argued that no contradictory evidence had been presented regarding the presence of Howell’s wife and children in the home at the time of the shooting and that, other than playing to the jury’s sympathy, no relevant purpose existed for the admission of the photographs. In response, Howell contended that the photographs were relevant because they helped the jury understand his state of mind at the time of the shooting. After hearing each party’s argument on the issue, the circuit court judge ruled to exclude the photographs.
¶ 30. “[I]n considering the competency, relevancy[,] and materiality of photographs, it is within the sound discretion of the trial judge to determine whether or not the photographs have a legitimate evidentiary purpose.” Voyles v. State, 362 So.2d 1236, 1241 (Miss.1978) (citations omitted). The record reflects no abuse of discretion by the circuit court judge in evaluating the probative value and prejudicial effect of the photographs before excluding them. Applying Rule 403, the circuit court judge found that the photographs’ prejudicial effect outweighed their probative value since they tended to *221 invoke sympathy from the jury without any relevant or probative evidentiary purpose. We therefore find that this argument lacks merit.
¶ 31. THE JUDGMENT OF THE MARSHALL COUNTY CIRCUIT COURT OF CONVICTION OF MANSLAUGHTER AND SENTENCE OF TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH THREE YEARS SUSPENDED, SEVENTEEN YEARS TO SERVE, AND THREE YEARS OF POST-RELEASE SUPERVISION, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS, MAXWELL, FAIR AND JAMES, JJ., CONCUR.

. In a single-count indictment, Howell was charged with murder pursuant to Mississippi Code Annotated section 97 — 3—19(l)(a) (Rev. 2006).

. See Miss.Code Ann. § 97-3-35 (Rev. 2006).

. See Price v. State, 892 So.2d 294, 297 (¶¶ 11-12) (Miss.Ct.App.2004) (discussing the standard of review for claims challenging the weight and sufficiency of the evidence).

. See Davis v. State, 660 So.2d 1228, 1259 (Miss. 1995) (acknowledging that this Court reviews the circuit court's exclusion of photographs for abuse of discretion).

. The record reflects that Howell requested and was given a jury instruction on self-defense.

. Section 97-3-35 defines manslaughter as "[t]he killing of a human being, without malice, in the heat of passion, but in a cruel or unusual manner, or by the use of a dangerous weapon, without authority of law, and not in necessary self-defense[.]”

. See Miss.Code Ann. § 97 — 3—15(l)(e) (Rev. 2006) (discussing justifiable homicide); New-ell v. State, 49 So.3d 66, 74 (¶ 22) (Miss.2010) (discussing the castle doctrine); Banton v. State, 53 So.3d 796, 798-99 (¶¶ 10-11) (Miss. Ct.App.2010) (discussing and applying die casde doctrine).

. See Green v. State, 631 So.2d 167, 174 (Miss. 1994) (finding that the question of whether the defendant fired a gun in the heat of passion was a proper issue for the jury to resolve); Schankin v. State, 910 So.2d 1113, 1117 (¶ 8) (Miss.Ct.App.2005) ("The determination of whether Schankin committed the crime while acting in the heat of passion was properly submitted to the jury for resolution. ...”).

. See Green, 631 So.2d at 174; Schankin, 910 So.2d at 1117 (¶ 8).

.During the conference on jury instructions, the State objected to Howell’s request for an instruction that included the castle doctrine’s presumption allowing the use of defensive force. The State objected on the ground that the record contained no evidence of unlawful and forcible entry of Howell’s dwelling by Jones. In response to the State’s objection, the defense argued that the record contained evidence that Howell asked Jones to leave. However, as previously discussed, the record also contained testimony from the State's wit *219 nesses that Howell blocked Jones’s exit from the garage. The State therefore asserted that Jones’s failure to comply with the request to leave may have been sufficient for a misdemeanor trespass but that Howell’s request failed to satisfy the castle doctrine’s requirement of forcible and unlawful entry.
The defense also contended that the evidence indicated that Jones appeared to be reaching for a baseball bat, but the State responded that such evidence failed to constitute the forcible “entry” necessary to invoke the castle doctrine. The State further argued that Howell's testimony that Jones reached for something raised the defenses of self-defense and defense of others, but not the castle doctrine's presumption and the related right to use deadly defensive force. The circuit court considered the parties' arguments and then gave the jury instructions encompassing Howell’s defense theories.